BLANK ROME LLP
Attorneys for Defendant
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOPMAR S.R.L., <br><br> Plaintiff, <br><br> - against - <br><br> BASIC COMMODITIES B.V., <br><br> Defendant. | 08 CIV 5009 (RPP) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE ORDER OF MARITIME ATTACHMENT AND GARNISHMENT OBTAINED UNDER SUPPLEMENTAL RULE B OF THE SUPPLEMENTAL RULES OF F. R. CIV. P. FOR CERTAIN ADMIRALTY AND MARITIME CLAIMS**

*Jeremy J.O. Harwood*
*Blank Rome LLP*
*The Chrysler Building*
*405 Lexington Avenue*
*New York, NY 10174*
*(212) 885-5000*

130260.00601/6656431v.1

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

THE BASIC FACTS ..............................................................................................................1
    A.      THE COMPLAINT ........................................................................................1

ARGUMENT ..........................................................................................................................2

POINT I ...................................................................................................................................2
PLAINTIFF CARRIES THE BURDEN TO SHOW WHY THE ATTACHMENTS
SHOULD BE MAINTAINED; OTHERWISE THE COURT IS REQUIRED TO
VACATE THE ATTACHMENTS ..........................................................................................2


POINT II .................................................................................................................................3
THE APPLICATION FOR A RULE B ATTACHMENT IN RESPECT OF THE
INDEMNITY CLAIMS WAS PREMATURE ........................................................................3

    A.      THE APPLICABLE STANDARD ................................................................3
    B.      JUDGE KAPLAN'S DECISION ...................................................................5

        1.      DISCUSSION OF ENGLISH LAW............................................6
        2.      APPLICATION OF ENGLISH LAW TO THE FACTS TO FIND THE
               INDEMNITY CLAIM PREMATURE.......................................7

    C.      SDNY RULE B CASES HOLDING AN INDEMNITY CASE IS "RIPE" ...7
    D.      THE INDEMNITY CLAIM IS PREMATURE .............................................7

CONCLUSION ........................................................................................................................9

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Aqua Stoli Shipping Ltd. v Gardner Smith Pty. Ltd.*, 460 F.3d 434 (2d Cir. 2006)..................................................................................................2

*Bottiglieri di Navigazione SPA v. Tradeline LLC*, 472 F. Supp. 2d 588 (S.D.N.Y. 2007)..............................................................................5,6,7,8

*Greenwich Marine, Inc. v. S.S. ALEXANDER*, 339 F.2d 901 (2d Cir. 1965)........3,4

*Mitsui Steamship Co. Ltd. v. Jarka Corp.*, 218 F. Supp. 424 (E.D.PA. 1963).........3

*Patricia Hayes & Associates, Inc. v. Cammell Laird Holdings U.K.*, 339 F.3d 76 (2d Cir. 2003) ..............................................................................4

*Salazar v. THE ATLANTIC SUN*, 881 F.2d 73 (3d Cir. 1989) .................................2

*Seaplus Line Co. v. Bulkhandling Handymax*, 409 F. Supp. 2d 316 (S.D.N.Y. 2005)..................................................................................................2

*Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532 (S.D.N.Y. 2007)..................................................................................................4

*Staronset Shipping Ltd. v. North Star Nav. Inc.*, 659 F. Supp. 189 (S.D.N.Y. 1987)..................................................................................................7

*T& O Shipping, Ltd. v. Lydia Maritime Shipping Co. S.A.*, 415 F. Supp. 2d 310 (S.D.N.Y. 2006)..........................................................................................7

130260.00601/6656431v.1

## INTRODUCTION

Defendant BASIC COMMODITIES B.V. ("BC") respectfully submits this memorandum of law in support of its motion pursuant to Supplemental Rule E and F. R. Civ. P. Rule 12 to vacate an order of maritime attachment and garnishment obtained under Supplemental Rule B of the Supplemental Rules of F. R. Civ. P. for Certain Admiralty And Maritime Claims ("Supplemental Rules") obtained by Plaintiff pursuant to which it has attached $2,784,750 to date.

## THE BASIC FACTS

**A.     The Complaint**

Plaintiff Dopmar S.R.L. ("Dopmar") obtained a Rule B attachment order dated May 30, 2008 (the "Attachment Order") pursuant to a verified complaint dated May 30, 2008 (the "Complaint"). The Complaint asserts claims relating to the potential indemnity to cargo "receivers" (the "Turkish Cargo Claimants"). It claims that the Turkish Court had issued a "precautionary judgment" for $4,000,000, Id. ¶ 8, for the damage of a cargo, Complaint, ¶¶ 7, 8, in respect of which it claims and seeks to attach a total of $4,744,000 (the "Indemnity Claim"). Id. ¶ 18. Dopmar has attached $2,784,750 to date. The Indemnity Claim is alleged to be subject to London arbitration.

## ARGUMENT

### POINT I

### PLAINTIFF CARRIES THE BURDEN TO SHOW WHY THE ATTACHMENTS SHOULD BE MAINTAINED; OTHERWISE THE COURT IS REQUIRED TO VACATE THE ATTACHMENTS

An order of maritime attachment and garnishment pursuant to Rule B is typically issued upon a minimal prima facie showing, usually made ex parte. See, e.g., Seaplus Line Co. v. Bulkhandling Handymax, 409 F. Supp.2d 316 (S.D.N.Y. 2005). Once property has been restrained:

> Any person claiming an interest in it shall be entitled to a prompt hearing at which *the plaintiff shall **be required to show why the arrest or attachment should not be vacated*** or other relief granted consistent with these rules.

Rule E(4)(f) (emphasis supplied).

The Second Circuit has found that Rule E(4)(f) is clear and the burden is on the plaintiff to show the attachment "was properly ordered and complied with the requirements of Rules B and E." Aqua Stoli Shipping Ltd. v Gardner Smith Pty. Ltd., 460 F.3d 434, 445 n.5 (2d Cir. 2006).[1] Rule E does not specify what form the post-attachment hearing must follow and the nature and scope of the hearing depends entirely upon the issues in controversy. Salazar v. THE ATLANTIC SUN, 881 F.2d 73, 79 (3d Cir. 1989).

---

[1] To the extent the attachment is to be vacated on an equitable ground, however, the burden is on the defendant to establish any equitable grounds for vacatur. Id.

2

Accordingly, the burden is now on Plaintiff to establish why the attachments should be maintained.

## POINT II

### THE APPLICATION FOR A RULE B ATTACHMENT IN RESPECT OF THE INDEMNITY CLAIMS WAS PREMATURE

**A.  THE APPLICABLE STANDARD**

The touchstone case for any discussion as to when and whether a maritime plaintiff's claim is too premature to sustain an application for an attachment is Greenwich Marine, Inc. v. S.S. ALEXANDER, 339 F.2d 901 (2d Cir. 1965). In Greenwich, the District Court was called upon to determine whether there was just cause for arresting and attaching the defendant vessel. The District Court held that the plaintiff's claim was premature. The Second Circuit agreed because "no judgment had been entered against Greenwich for the cargo damage, and no suit had been instituted against Greenwich for the cargo damage". Id. at 905. The Second Circuit affirmed.

The Second Circuit recognized that occasionally some district judges were willing, under certain circumstances, to ignore the prematurity of a claim, but "this does not mean that all doctrines of accrual have been abrogated in admiralty." Id. The Greenwich Court gave as an example the decision by Judge Kraft in Mitsui Steamship Co. Ltd. v. Jarka Corp., 218 F.Supp. 424 (E.D.PA. 1963) in which an indemnity cause of action in a maritime case was dismissed for failure to state a cause of action because it was premature and "nothing more than an abstraction" **even though** suit against the party seeking indemnification was pending in another court. Greenwich, 339 F.2d at 905.

3

In Patricia Hayes & Assocs., Inc. v. Cammell Laird Holdings U.K., 339 F.3d 76, 82-83 (2d Cir. 2003), the Court held that "a district court may in some circumstances disregard the prematurity of a plaintiff's claim as a matter of discretion" (emphasis in original).

In Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd., 478 F. Supp.2d 532, 540-41 (S.D.N.Y. 2007), however, the Court found that "courts in this circuit have not been receptive to contingent indemnity claims as bases for maritime arrests [or] attachments" and found that to the extent that the Court still has discretion to disregard the prematurity of a plaintiff's claim, such discretion "should only be exercised under compelling circumstances". Id. at 543-44. See also, Sanko Steamship Co. Ltd. v. China National Chartering Corp.,

Indeed, the Greenwich Court noted that objections to prematurity are ignored "only in isolated situations under peculiar factual circumstances." Greenwich, 339 F.2d at 905. Such a peculiar factual circumstance may arise where a claim might have been premature when filed but was certain to mature shortly (i.e., within a matter of hours), as was the case in Patricia Hayes, 339 F.3d at 82-83. The time to measure whether a claim is "ripe enough" to sustain an attachment is as of the time of the filing of the complaint. Absent such a fairly anticipated maturity of a claim within a very brief period of time, the Greenwich Court held that later events, including the protraction of litigation, cannot serve to ripen a claim that was premature at the time the application for the attachment was made. Greenwich, 339 F.2d at 908-909 ("a concern for future cases leads us to

4

squelch all hope that a litigation may become sufficiently protracted so as to enable a premature claim to ripen just before judgment is rendered on appeal").

**B.   JUDGE KAPLAN'S DECISION**

In Bottiglieri di Navigazione SPA v. Tradeline LLC, 472 F. Supp.2d 588 (S.D.N.Y. 2007) there was a charter party claim between the "vessel's actual owner" (known as "Head Owner") and Bottiglieri as "disponent" or chartered owner and its charterer, Tradeline. As stated by the court: "[t]he substantive provisions of the two charter parties are substantially the same". Id. Both the head charter and the sub-charter called for London arbitration, under English law, of any disputes.

The Head Owner settled a cargo receiver's claim and "announced its intention to commence arbitration against plaintiff [Bottiglieri] for breach of their charter party." Id. Bottiglieri "in turn, announced its [own] intention" to arbitrate against Tradeline. The Court noted that "[t]he arbitrations have not progressed much over the years" and:

> It is uncontested ... that there has been no settlement in the dispute between plaintiff and [Head] Owner, no finding that plaintiff is liable to the Owner for damages, and no award against plaintiff [in favor of the Head Owner].

472 F. Supp.2d at 589.

Tradeline moved to vacate a Rule B attachment of approximately $3 million of its funds brought by Bottiglieri for its potential liability in the arbitration with Head Owner. The "principal argument is that plaintiff's indemnity claim is unripe under English law ...". Id.

5

1.  **Discussion of English Law**

The Court first reviewed the parties' agreement that English law governed the nature of the claims:

> The parties agree that the seminal English case addressing when indemnity claims accrue is *Telfair Shipping Corp. v. Intersea Carriers S.A. (The "Caroline P"), The Caroline P,* after an exhaustive survey of the case law, concluded that:
>
>> it is possible to identify at least three ways in which a person (A) who has become liable to (B) may be able to obtain redress from (C). The first way is by an action for damages for breach of contract (or warranty). In such a case (A) will be in a position to claim that the incurring of his liability to (B) flowed directly from an act of (C) which constituted a breach of a contract between (A) and (C) or of a warranty given by (C) to (A) …. The cause of action will date from the date of breach.
>>
>> * * *
>>
>> The third way in which (A) may clam against (C) in respect of sums which he has had to pay to (B) is under an implied indemnity. As I understand the matter, such an implied indemnity would prima facie be a general indemnity of the kind recognized by the common law …. [and A()] could not sue [(C)' unless he could aver payment to [(B)]."
>
> *The Caroline P* does not precisely lay out how to distinguish between these theories. It appears, however, that the former contemplates a contract defining A's potential liability to B and a breach by C that expands the scope of that potential liability. Thus, the mere exposure to grater liability is the injury to A. The latter, in contrast, includes the common identity scenario whereby C's act causes A to breach its pre-existing contract with B.

472 F. Supp.2d at 590.

130260.00601/6656431v.1

2.  **Application of English Law To The Facts To Find The Indemnity Claim Premature**

Judge Kaplan then held:

> Here, plaintiff does not allege that any act by defendant increased plaintiff's potential liability to the Owner. Rather, plaintiff's claim falls squarely within The Caroline P's latter category. This is clear from the allegations of the complaint, which trace the bulk of the monetary claim made against defendant to the damages claimed by the Owner and state plainly that "Defendant is liable to indemnify Plaintiff for all amounts claimed against it by [the Owner]." This claim for indemnity is not ripe under English law. Plaintiff thus has not established the "valid prima facie admiralty claim" required under Aqua Stoli.

472 F. Supp.2d at 591.

C.  **SDNY RULE B CASES HOLDING AN INDEMNITY CASE IS "RIPE"**

Staronset Shipping Ltd. v. North Star Nav. Inc., 659 F. Supp. 189 (S.D.N.Y. 1987) represents one of the very few cases in which the Court determined that a contingent indemnity claim was "ripe enough" to sustain an attachment. In Staronset, Judge Knapp held that where the party seeking indemnity had itself been sued (or arbitration brought against it) and where that party had been put to significant expense as a result, such as by being required to post security, then an otherwise premature contingent indemnity claim, upon a balancing of the equities in the Court's discretion, could be considered "ripe enough" to support an application for a Rule B attachment. Id. At 190-91.

D.  **THE INDEMNITY CLAIM IS PREMATURE**

Dopmar asserts that its Indemnity Claim is governed by English law. T& O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A., 415 F. Supp. 2d 310, 314 (S.D.N.Y.

7

2006) ("[t]he law of the contract applies to the question of whether a claim has accrued, but federal law governs the determination of whether an attachment is reasonable.")

Plaintiff's claims, both *at the time it made its application for a Rule B* attachment and now, were premature.[2] As in Bottiglieri, 472 F.Supp. 2d at 589, the Turkish Cargo Claimants:

(1) have not settled the dispute;

(2) there is no finding or judgment that Dopmar is liable to the Turkish Cargo Claimants;

(3) there is no award against Dopmar.

---

[2] On April 25, 2005, Rule B(1)(a) was amended to clarify, inter alia, that the point in time for measuring whether a plaintiff has met its burden to entitle it to a maritime attachment is as of the time the application for the attachment was made. While the former language was possibly unclear, Rule B presently leaves no room for confusion: "If a defendant is not found within the district *when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed*, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process" (emphasis supplied). The amendment came into effect December 1, 2005 and was therefore in effect at the time that BDN made its application on May 15, 2006.

8

## CONCLUSION

WHEREFORE, Defendant respectfully requests that the PMAG in respect of the Indemnity Claim be vacated and for such other relief as is fair and equitable and as requested herein.

Date:   New York, New York
        July 24, 2008

                        Respectfully submitted,

                        BLANK ROME LLP

By: _/s/ Jeremy Harwood_
Jeremy J.O. Harwood
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

*Attorneys for Defendant*