UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
DOPMAR S.R.L.,

                                          **08 Civ. 5009 (RPP)**

              Plaintiff,          DECLARATION


        -against-


BASIC COMMODITIES B.V. a/k/a
BASIC COMMODITIES - AMSTERDAM,


              Defendant.
---------------------------------X

    I, Garth S. Wolfson, hereby declare as follows:

    1.    I am a partner with the firm of Mahoney & Keane, LLP,

counsel of record for plaintiff, DOPMAR S.R.L.   Based upon my

personal knowledge and my review of the file maintained by my

office, I am familiar with the proceedings in this case.

    2.    Herewith attached are true copies of the following:

          Exhibit 1:    Plaintiff's Verified Complaint;

          Exhibit 2:    Ex Parte Order for Process of
                        Maritime Attachment;

          Exhibit 3:    Verified Answer under Admiralty
                        Rule E(7) on behalf of defendant,
                        BASIC COMMODITIES B.V. (BASIC);

          Exhibit 4:    Charter Party between plaintiff and
                        BASIC;

          Exhibit 5:    Precautionary Judgment of The
                        Istanbul Admiralty Court and
                        English Translation;

Exhibit 6:    Plaintiff's Call for Arbitration
              with BASIC;

Exhibit 7:    Plaintiff's Laytime Calculation;
              and

Exhibit 8:    Declaration of Peter Charles Jago
              executed on July 31, 2008.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of
perjury that the foregoing is true and correct.

Executed on August 1, 2008
New York, New York

                    Respectfully submitted,

                    MAHONEY & KEANE, LLP
                    Attorneys for Plaintiff

          By:  _____
                    Garth S. Wolfson (GW 7700)
                    11 Hanover Square, Tenth Floor
                    New York, New York 10005
                    (212) 385-1422

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
DOPMAR S.R.L.,

              Plaintiff,

     -against-

BASIC COMMODITIES B.V. a/k/a
BASIC COMMODITIES - AMSTERDAM,

            Defendant.
------------------------------------X

JUDGE PATTERSON

08 CIV 5009

VERIFIED
COMPLAINT

PLEASE TAKE NOTICE that Plaintiff, DOPMAR S.R.L. (Plaintiff or "DOPMAR"), by its attorneys, MAHONEY & KEANE, LLP, as and for a Complaint against Defendant, BASIC COMMODITIES B.V. a/k/a BASIC COMMODITIES - AMSTERDAM (Defendant or "BASIC COMMODITIES") alleges, upon information and belief, as follows:

1.    This is a case of admiralty and maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is based upon 28 U.S.C. § 1333, as well as the Court's diversity, pendent, supplementary and ancillary jurisdiction.

2.    Plaintiff is a legal entity duly organized and existing pursuant to the laws of a foreign country and the owner of the M/V LIBERTAS.

3.    Defendant BASIC COMMODITIES is a business entity organized and existing pursuant to the laws of a foreign country, with a principal place of business located at Spaarne 57, Haarlem, Noord Holland, Netherlands 2011.

4.   Defendant, as charterer, and Plaintiff, as owner, entered into a voyage charter agreement dated March 25, 2008 for the use of the M/V LIBERTAS in the carriage of a cargo of bagged cocoa beans from Ivory Coast to Turkey.

5.   Under the terms of the charter agreement Defendant was responsible for the loading, discharge, and proper stowage of the cargo.

6.   Defendant breached the charter agreement by unlawfully and in contravention of the terms of the agreement, failing to properly load, stow, and discharge the cargo.

7.   As a result of Defendant's failure to properly load, stow, and discharge the cargo, receivers have claimed that the cargo was heavily damaged.

8.   As a result of Defendant's failure to properly load and stow the cargoes, shippers, consignees and/or owners of the cargo applied for and obtained from the Turkish Court a precautionary judgment and order of arrest against the M/V LIBERTAS to secure claims in the amount of US$4,000,000.

9.   As a result of the foregoing, Plaintiff has incurred and will continue to incur damages, costs and expenses for which Defendant is liable under the terms of the charter agreement between the parties and at law.

10.   As a result of the foregoing, Plaintiff was unable to carry out its course of business, and therefore incurred and will continue to incur damages, costs and expenses for which Defendant is liable under the terms of the agreement between the parties and at law.

11.   Plaintiff has placed Defendant on notice of its claim that Defendant has breached the referenced agreement.

12.   Despite Plaintiff's demand, Defendant has failed to pay the amounts due and owing to Plaintiff under the agreement.

13.   Pursuant to the charter party fixture, disputes are to be settled by arbitration in London, and Plaintiff has commenced or will shortly commence arbitration with Defendant, accordingly.

14.   Under the rules of such arbitration, interest, costs, and attorneys' fees are routinely awarded to the prevailing party.

15.   As a result of Defendant's breach of the agreement, Plaintiff has sustained damages, and, as best as can now be estimated, Plaintiff expects to recover the following amounts by way of arbitral award:

| | |
|---|---|
| Principal Claim | $4,000,000.00 |
| Interest (for a period of 2 yrs at 6.0%) | 494,400.00 |
| Attorneys' and Expert's Fees, Arbitration Expenses | 250,000.00 |
| **Total** | **$4,744,400.00** |

16.   Plaintiff sues on its own behalf and as agent and trustee on behalf of any other party who may now have or hereinafter acquire an interest in this action.

17.   All conditions precedent required of Plaintiff in the aforesaid agreement have been performed.

18.    Defendant cannot be found, within the meaning of Rule B of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims, within this District, but, upon information and belief, Defendant has or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court held in the hands of garnishees including, but not limited to, Bank of America, Bank of New York, Citibank, HSBC Bank USA NA, J.P. Morgan Chase, Standard Chartered Bank, Wachovia Bank N.A., Deutsche Bank AG, ABN AMRO Bank N.V., American Express Bank Ltd., Mellon Bank, Lloyds TSB Bank Switzerland PLC, Banca Monte Dei Paschi Di Siena S.P. and/or UBS, which are believed to be due and owing to Plaintiff.

19.    For the purpose of obtaining personal jurisdiction over Defendant and securing Plaintiff's claim as described above, Plaintiff seeks and order from this Court directing the Clerk of the Court to issue process of maritime attachment and garnishment pursuant to Rule B of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims and the Federal Arbitration Act, 9 U.S.C. § 1 et seq., restraining and attaching any assets, cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit freights, sub-freights, charter hire, sub-charter hire, and/or other assets belonging to, due or for the benefit of Defendant, including but not limited to such assets as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking institutions including but not limited to the

aforesaid garnishees and/or any other garnishee upon whom a copy of the Process of Maritime Attachment and Garnishment may be served.

WHEREFORE, Plaintiff prays:

A. That process in due form of law issue against Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint;

B. That, since Defendant cannot be found in this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, the Court direct the Clerk of the Court to issue an order, pursuant to Rule B of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims and the Federal Arbitration Act, 9 U.S.C. § 1 et seq., restraining and attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including but not limited to the Bank of America, Bank of New York, Citibank, HSBC Bank USA NA, J.P. Morgan Chase, Standard Chartered Bank, Wachovia Bank N.A., Deutsche Bank AG, ABN AMRO Bank N.V., American Express Bank Ltd., Mellon Bank, Lloyds TSB Bank Switzerland PLC, Banca Monte Dei Paschi Di Siena S.P., UBS and/or any other garnishee upon whom a copy of the Process of Maritime Attachment and Garnishment may be served, in the amount of **$4,744,400.00** to secure Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and answer the matters alleged in the Complaint;

C.    That the Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof.

D.    That Plaintiff has such other and further relief as this Honorable Court may deem just and proper.

Dated:    New York, NY
          May 30, 2008

                              Respectfully submitted,

                              MAHONEY & KEANE, LLP
                              Attorneys for Plaintiff
                              DOPMAR S.R.L.

By:    _____
       Garth S. Wolfson (GW 7700)
       11 Hanover Square, Tenth Floor
       New York, New York 10005
       Tel. (212) 385-1422
       Fax. (212) 385-1605
       File No. 12/3590/B/08/5

## ATTORNEY VERIFICATION

STATE OF NEW YORK      :
                       :  SS.:
COUNTY OF NEW YORK     :

    1.   My name is GARTH S. WOLFSON.

    2.   I am over 18 years of age, of sound mind, capable of making this Verification and fully competent to testify to all matters stated herein.

    3.   I am the attorney for Plaintiff, DOPMAR S.R.L., and I am fully authorized to make this Verification on its behalf.

    4.   I have read the foregoing Complaint and the contents thereof are true and accurate to the best of my knowledge, information and belief.

    5.   The reason that this Verification was made by me and not the Plaintiff is that the Plaintiff is a corporation none of whose officers are present in this District.

    6.   The source of my knowledge is information and records furnished to me by the Plaintiff and its counsel, all of which I believe to be true and accurate.

Dated:   New York, New York

       May 30, 2008

                                       GARTH S. WOLFSON (GW 7700)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/1/08

PATTERSON, J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
DOPMAR S.R.L.,

1:08-cv- 5009 (RPP)

                    Plaintiff(s),

          -against-                     EX PARTE ORDER FOR
                                            PROCESS OF
BASIC COMMODITIES B.V. a/k/a          MARITIME ATTACHMENT
BASIC COMMODITIES - AMSTERDAM,

                    Defendant(s).
----------------------------------X

WHEREAS, on May 30, 2008, Plaintiff DOPMAR S.R.L. ("DOPMAR"
or "Plaintiff"), filed a Complaint herein against Defendant **BASIC
COMMODITIES B.V. a/k/a BASIC COMMODITIES - AMSTERDAM ("BASIC
COMMODITIES" or "Defendant")**, for damages in the amount of
**$4,744,400.00** and praying for the issuance of Process of Maritime
Attachment and Garnishment ("PMAG") pursuant to Rule B of the
Supplemental Admiralty Rules for Certain Admiralty and Maritime
Claims of the Federal Rules of Civil Procedure, and

WHEREAS, the Process of Maritime Attachment and Garnishment
would command the United States Marshal or other designated
process server attach any and all of Defendant's property within
the District of this court; and

WHEREAS, the Court has reviewed the Complaint and the
Supporting Affidavit, and the conditions of Supplemental Admiralty
Rule B appearing to exist, it is hereby

ORDERED, that process of Maritime Attachment and Garnishment
shall issue against all tangible or intangible property belonging
to, claimed by or being held for Defendant by any garnishees
within this District, including but not limited to Bank of

- 1 -

America, Bank of New York, Citibank, HSBC Bank USA NA, J.P. Morgan Chase, Standard Chartered Bank, Wachovia Bank N.A., Deutsche Bank AG, ABN AMRO Bank N.V., American Express Bank Ltd., Mellon Bank, Lloyds TSB Bank Switzerland PLC, Banca Monte Dei Paschi Di Siena S.P. and/or UBS, in the amount of **$4,744,400.00,** pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, and it is further

ORDERED, that any person claiming an interest in the property attached or garnished pursuant to said order shall, upon application to this Court, be entitled to a prompt hearing at which Plaintiff shall be required to show cause why the attachment and garnishment should not be vacated or other relief granted, and it is further

ORDERED, that supplemental process enforcing the Court's Order may be issued by the Clerk upon application without further Order of the Court, and it is further

ORDERED, that following initial service by the United Stated Marshal or other designated process served upon such garnishee, that supplemental or subsequent service of the Process of Maritime Attachment and Garnishment, as well as this Order, may be made by way of facsimile transmission or e-mail to each garnishee  and that such garnishee personally served shall furnish to Plaintiff's counsel, the U.S. Marshal or designated process server a facsimile number or e-mail address to which supplemental and/or subsequent services may be made or other verifiable electronic means, including e-mail, if transmitted from within the District shall be deemed to have been made within the district; and it is further

ORDERED, that service on any garnishee as described above is deemed effective continuous services throughout the day from the time of each service through the opening of the garnishee's business the next business day, and it is further

ORDERED, that pursuant to Federal Rule of Civil Procedure (5)(b)(2)(D) each garnishee may consent to accept service by any other means, and it is further

ORDERED, that a copy of this Order be attached to and served with said process of maritime Attachment and Garnishment.

NOW, on reading and filing the Affidavit of GARTH S. WOLFSON, sworn to on May 30, 2008, and good cause having been shown, it is hereby

FURTHER ORDERED, that Edward A. Keane, Cornelius A. Mahoney, Christopher H. Mansuy, Garth S. Wolfson, Jorge A. Rodriguez, Marie Cush, or any other partner, associate, paralegal or other agent of MAHONEY & KEANE, LLP be and is hereby appointed, in addition to the United States Marshal, to serve the Process of Attachment and Garnishment and the Complaint, together with any interrogatories, upon garnishee(s) Bank of America, Bank of New York, Citibank, HSBC Bank USA NA, J.P. Morgan Chase, Standard Chartered Bank, Wachovia Bank N.A., Deutsche Bank AG, ABN AMRO Bank N.V., American Express Bank Ltd., Mellon Bank, Lloyds TSB Bank Switzerland PLC, Banca Monte Dei Paschi Di Siena S.P. and/or UBS, together with any other garnishee(s) who (based upon information developed subsequent hereto by Plaintiff) may hold assets of, for, or on behalf of Defendant.

Dated:    New York, New York

          May 30, 2008

CERTIFIED AS A TRUE COPY ON

THIS DATE____6-1-08____

BY____Edd Dmi____

(  ) Clerk
(✓) Deputy

_____
                    U.S.D.J.

BLANK ROME LLP
Attorneys for Defendant
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOPMAR S.R.L., <br><br>                  Plaintiff, <br><br>     - against - <br><br> BASIC COMMODITIES B.V. a/k/a <br> BASIC COMMODITIES - <br> AMSTERDAM, <br><br>                Defendant. | 08 CIV 5009 (RPP) |

**ANSWER UNDER ADMIRALTY RULE E(7) OF SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE CLAIMS OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Defendant BASIC COMMODITIES B.V. ("BASIC") answers the verified Rule B complaint dated May 30, 2008 ("Complaint") of DOPMAR S.R.L. ("DOPMAR" or "Plaintiff") and states as follows upon information and belief:

1. Admits the allegations in Paragraph 1 of the Complaint.

2. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint.

3. Admits the allegations in Paragraph 3 of the Complaint.

130260.00601/6655688v.1

Case 1:08-cv-05009-RPP    Document 4    Filed 07/23/2008    Page 2 of 6

4.    Admits the allegations in Paragraph 4 of the Complaint.

5.    Denies the allegations in Paragraph 5 of the Complaint.

6.    Denies the allegations in Paragraph 6 of the Complaint.

7.    Denies the allegations in Paragraph 7 of the Complaint.

8.    Denies the allegations in Paragraph 8 of the Complaint.

9.    Denies the allegations in Paragraph 9 of the Complaint.

10.    Denies the allegations in Paragraph 10 of the Complaint.

11.    Admits the allegations in Paragraph 11 of the Complaint.

12.    Denies the allegations in Paragraph 12 of the Complaint.

13.    Denies the allegations in Paragraph 13 of the Complaint.

14.    Denies the allegations in Paragraph 14 of the Complaint.

15.    Denies the allegations in Paragraph 15 of the Complaint.

16.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint.

17.    Denies the allegations in Paragraph 17 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST

1.    The Court lacks personal jurisdiction over Defendant which is specifically not waived by an appearance herein pursuant to Supplemental Rule E(8).

### SECOND

2.    The Complaint fails to state a cause of action upon which relief may be granted.

2

### THIRD

3.    The Complaint must be stayed or dismissed under 9 U.S.C. § 1 et seq. and §§ 201, et seq. in favor of the Arbitration or in the chosen forum selection in the Charter and/or bills of lading.

### FOURTH

4.    Plaintiff is not the real party in interest and lacks standing to bring this claim against Basic.

### FIFTH

5.    The alleged claim is barred by applicable statutes of limitations.

### SIXTH

6.    The alleged claim is barred by operation of law.

### SEVENTH

7.    The alleged claim is barred by laches.

### EIGHTH

8.    Plaintiff has failed to include or join indispensable parties to this action.

### NINTH

9.    If plaintiff suffered any loss or damage as alleged, which is denied, it was caused by or contributed to by an act or omission by the plaintiff and/or other third-parties, and not by Basic.

### TENTH

10.    Plaintiff failed to properly mitigate their alleged damages.

### ELEVENTH

11.    Service of the Complaint was improper and insufficient.

130260.00601/6655688v.1

## TWELFTH

12.    Defendant did not have possession of or operate, manage, navigate or otherwise control the Vessel at the relevant times referred to in the Complaint and is not liable for any cargo damages or loss allegedly suffered.

## THIRTEENTH

13.    Defendant did not owe any duty to plaintiff or cargo receivers under theories of negligence and as a carrier under the United States Carriage of Goods by Sea Act, 46 U.S.C. §§1300-1315 ("COGSA"), the International Convention for the Unification of Certain Rules of Law relating to Bills of Lading ("Hague Rules") and/or the Brussels Protocol to the Hague Rules ("Hague-Visby Rules").

## FOURTEENTH

14.    Defendant is entitled to the benefit of all defenses and rights of limitation of liability afforded by all applicable contracts, statutes and treaties.

## FIFTEENTH

15.    Alternatively, if Defendant was a carrier under the relevant bills of lading or charter parties, it is entitled to all of the rights and defenses available under COGSA, the Hague Rules and/or the Hague-Visby Rules.

## SIXTEENTH

16.    If plaintiff suffered any damage or loss as alleged in the Complaint, which is denied, it was caused by the fault, neglect, omission, or breach of contract by their employees, agents or representatives or by one or more unnamed parties and occurred without any fault, negligence, or breach of duty on the part of Defendant, its agents, servants or employees.

4

17.    If any liability is imposed on Defendant by reason of the allegations contained in the Complaint, it is entitled to indemnity in full and/or contribution plus interest, together with its attorneys' fees and expenses.

WHEREFORE, Defendant Basic respectfully requests that:

(a)    The Complaint be dismissed against it in favor of arbitration or the chosen forum;

(b)    Basic be awarded its attorneys fees and all costs incurred in connection with this action; and

(d)    the Court award Basic such further and other relief as may be just.

Date:  New York, New York
       July 23, 2008

                                Respectfully submitted,

                                BLANK ROME LLP


                        By:  _____
                                Jeremy J.O. Harwood
                                The Chrysler Building
                                405 Lexington Avenue
                                New York, New York 10174
                                (212) 885-5000
                                    *Attorneys for Defendant*

130260.00601/6655688v.1

## VERIFICATION

STATE OF NEW YORK        )

                           : ss.:

COUNTY OF NEW YORK    )

Jeremy J.O. Harwood, being duly sworn, deposes and says:

1.      I am a member of the bar of this Honorable Court and of the firm of Blank Rome LLP, attorneys for Defendant.

2.      I have read the foregoing Answer and I believe the contents thereof are true.

3.      The reason this Verification is made by deponent and not by Defendant is that Defendant is a foreign corporation, no officer or director of which is within this jurisdiction.

4.      The sources of my information and belief are documents provided to me and statements made to me by representatives of Defendant.

_Jeremy Harwood_
Jeremy J.O. Harwood

Sworn to before me this
23rd day of July, 2008

_[signature]_
Notary Public

NEAL MITCHELL
Notary Public, State of New York
No. 01MI6114408
Qualified in New York County
Commission Expires Aug. 16, 20__

6

130260.00601/6655688v.1

**From:** Dopmar S.r.l. [dopmar@tiscali.it]

**Sent:** 25 March 2008 10:24

**To:** Salemme, Tommaso

**Subject:** FIXTURE RECAP


M/V "LIBERTAS"
SINGLEDECKER - GENERAL CARGO
- BUILT: 1985
- FLAG: PANAMA
- LOA:     111.30  M
  BEAM:    17.04  M
  DRFT:     7.027 M
- GRT /NRT:  4433/2618
  suez grt / nrt :4682.08/3705.38
  panama grt / nrt :5343.57/4343.69
- dwt / draft
  summer :7.278.38/7.027 m free board from deck:1993mm
  tpc :15.1
  displacement loaded : mt 9.389 m/tons
- TYPE OF HATCH COVERS: MCGREGOR SINGLE PULL TYPE
- NUMBERS HOLDS / HATCHES: 3 / 3
- HOLD CAPACITY:NO          GRAIN                      BALE
  --     --------------            ----------------
          1)    2430 CBM /  85735 CBFT    2230.94 CBM /  78704 CBFT
          2)    3885 CBM / 137310 CBFT    3633.35 CBM / 128311 CBFT
          3)    3437 CBM / 121389 CBFT    3169.43 CBM / 111921 CBFT
- HOLD DIMENSION:  HOLD  n°-1: 20.80 x 11.75 x 7.30 mt
                   HOLD  n°-2: 27.30 x 15.90 x 7.30 mt
                   HOLD  n°-3: 24.70 x 15.55 x 7.30 mt
- HATCH DIMENSION: HATCH n°-1: 13.00 x 10.60 mt
                   HATCH n°-2: 19.50 x 10.60 mt
                   HATCH n°-3: 19.50 x 10.60 mt
- hatch coaming heights :1.2 mtr
- tank tops : 6.5
- fuel capacity :324.7 mt
  gas oil capacity :9957 mt
  fw capacity :136 mt
- holds co2 fitted :yes
- SPEED LADEN/BALLAST ABT 10/10.5 KNTS
- CONSUPTION ABT 9.5 MT IFO 80 + ABT 1 MT MDO (MGO)
- cargo gear :3 hydrolift cranes/SWL-6/8/12
- OUTREACH BASIS 10 mt, LIFTING 9 mt EITHER P/SIDE AND S/SIDE
- TURN CYCLE 5/6 min DIPEND FROM SKILFULNESS OF CERTIFIED CRANE OPERATOR
- holds electric ventilated :yes


- VSL'S PRESENT POSITION / ITINERARY:
VSL UNDER DISCHARGE AT NAMIBE, ETC 15/02 PM/EVENING
ETS 15/02 EVENING OR 16/02 MORNING.


FOR,
- ALL SUBS IN ORDER, VSL FULLY FIXED
- ACCT BASIC COMMODITIES - AMSTERDAM
- CGO MIN 3500 UPTO FULL CARGO CAPACITY IN CHOPT OF COCOA BEANS IN BAGS STW ABT
82/84'
- SOLE CARGO
- ABIDJAN OR SAN PEDRO/ MARMARA IN CHOPT  1GSPB AA BENDS

- IN ANYCASE OWNER ACKNOWLEDGE EACH PORT AS SAFE/SUITABLE FOR THIS VESSEL
- 03rd MARCH 2008
- FREIGHT : USD. 740.000 LSUM FIOS BSS 1/1
- FRT PAYABLE 100% LESS COMM ONLY INTO CARRIERS NOMINATED BANK ACCNT
  W/IN 6 BDAYS AFT SIGN B/L MARKED  ''CLEAN ON BOARD''/  "FRT PAYABLE
  AS PER B/N". CHOPT FREIGHT PREPAID IN LATTER  THE BS/L WILL NOT RELEASED
  UNTIL OWNER RECEIVE CHRTS BANK SWIFT
- PAYMENT TO BE EFFECT FROM CHARTERER DIRECTLY (NOT VIA BROKER OFFICE )
- SHOULD THE ORIGINAL B/L ARE NOT READY UPON VESSEL ARRIVAL, OWNERS TO DISCHARGE
  CARGO AGAINST MERCHANTS  LOI ON A USUAL P&I FORM.
- L/D 8.5 TTL DAY SSHEX EIU BENDS TIME COUNTING 14/08 CLS
- DEMURRAGE USD 9.200 PDPR/FD BENDS
- DEM IF ANY TO BE SETTLE W/IN 10 DAY AFTER COMPLETION OF THE SHIPMENT
- CHARTS AGENTS AT LOAD PORT - CHARTS AGENTS AT LOADPORT - AFRITRAMP Abidjan
  Tel : +225 21.22.00.00 / DL  : +225 21.22.03.41Cel : +225 07.69.00.37 /
  Fax : +225 21.22.03.93
  Internet mail : olivier.sou@ci.dti.bollore.com
- CHARTS AGENT AT DISCH PORTS - WILL REVERT
- TAXES/DUES ON CARGO/FREIGHT, IF ANY, FOR CHARTS ACCT
- TAXES/DUES ON VSL, IF ANY FOR OWS ACCT
- IF ANY  FUMIGATION NEEDED AT LOADING PORT THE SAME WILL BE CHRTS ACCOUNT
- DUNNAGE A/O KRAFT PAPER A/O PLAYWOOD FOR CARGO PROTECTION IN HOLD FOR CHARTS'
ACCT
- OWNERS TO PRESENT VESSEL IN A GOOD CONDITION TO CARRY C/P CARGO. THE SHIP AND
HOLDS
  ARE WILL BE READY CLEAN - DRY AND READY FOR LOADING IF VESSEL IS REFUSED DUE TO
  PROVEN EVIDENTS BY THE SHIPPERS THAT THE HOLDS ARE NOT ACCEPTABLE TO LOAD THE
CARGO
  OWNERS TO TAKE NECESSARY STEPS TO PREPARE VESSEL AT THEIR COST AND TIME.
- MASTER/OWNERS TO GIVE  7  DAYS 48/24/12 HRS FOR CGO READINESS TO M&M
MARINE/SHIPPER/CHRS
- OWNER NOT RESPONSIBLE FOR EXTRA INSURANCE WHICH WILL BE FOR CHRTS ACCT
- GA / ARB IN LONDON ENGLISH LAW
- OTHERWISE MERCHANTS B/N
- 2,50 PCT ADCOM
- CARGO GEAR CLAUSE TO BE READ AS FOLLOWS :
  AT LOADPORT / DISPORT :
  VESSEL IS EQUIPPED WITH THE FOLLOWING CARGO HANDLING GEAR AS PER HER
  DESCRIPTION IN GOOD WORKING ORDER, WHICH ARE AT MERCHANT'S FREE DISPOSAL,
  WHENEVER REQUIRED, TOGETHER WITH CORRESPONDING RUNNING GEAR AND WITH THE
  NECESSARY MOTIVE POWER TO WORKALL GEAR SIMULTANEOUSLY. ANY TIME LOST AS A
  RESULT OF VESSEL'S POWER FAILURE, BREAKDOWN OF WINCHES/VESSEL'S CRANES
  AND/OR GEAR SHALL NOT COUNT AS LAYTIME.

CLAUSE 21 : PARA 2 : DELETE 'OR ON BEHALF OF'

CLAUSE 22 : PARA 1 : DELETE ' TERMINAL CHARGES' AND REPLACE WITH 'PROFORMA D/A'
                     DELETE ' AND WHARFAGE AT DISCHARGE'
           PARA 2 : DELETE IN FULL

CLAUSE 23 : PARA 2 : DELETE IN FULL

CLAUSE 24 : PARA 1 : PLS ADD ' AND DEMURRAGE'
END

---

This email has been scanned for all viruses by the MessageLabs Email
Security System.

02/05/2008

The information contained in this message and any attachment to it is confidential.
It is intended only for the stated addressee(s) and access to it by any other person is unauthorised.
If you are not an addressee, you must not disclose, copy, circulate or in any other way
use or rely on the information contained in this message or any attachment.
If you have received this message in error please inform us immediately and delete all
copies of it from your system.
British Marine Managers Limited is incorporated in Great Britain and registered in
England & Wales number 3256463.
British Marine Luxembourg SA is incorporated in the Grand Duchy of Luxembourg as a
Societe Anonyme RCS 71026 and registered in England and Wales number FC022505,
branch number BR005527. Both of Walsingham House, 35 Seething Lane, London EC3N 4DQ

This email has been scanned for all viruses by the MessageLabs Email
Security System.

This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email

| Agents (full style and address) | | **BIMCO LINER BOOKING NOTE**<br>**CODE NAME: "CONLINEBOOKING 2000"** | | |
|---|---|---|---|---|
| | | Place and date | | |
| | | Vessel | | |
| Carrier (full style and address) | | Time for shipment (about) | | |
| | | Port of loading** | | |
| | | Port of discharge | | |
| Merchant* (full style and address) | | Merchant's representatives at loading port (full style and address) | | |

| Container No./Seal No./Marks and Numbers<br>(if available) | Number and kind of packages, description of cargo | Gross weight, kg<br>(if available) | Measurement, m³<br>(if available) |
|---|---|---|---|
| | | | |

| Freight details and charges | Special terms, if agreed |
|---|---|
| | Additional clauses .. until and including..are fully incorporated in this Booking Note |
| Freight (state prepayable or payable at destination) | |

It is hereby agreed that this Contract shall be performed subject to the terms contained on Page 1 and 2 hereof which shall prevail over any previous arrangements and which shall in turn be superseded (except as to deadfreight) by the terms of the Bill of Lading.

| Signature (Merchant) | Signature (Carrier) |
|---|---|
| | |

Copyright, published by
The Baltic and International Maritime Council
(BIMCO), Copenhagen, 2000

* As defined here after (Cl. 1)
** For combined transports or through transport only safely get and lie always afloat)

This document is a computer generated CONLINEBOOKING 2000 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

# FULL TERMS OF THE CARRIER'S BILL OF LADING FORM*

Page 2

1. Definitions

2. Notification

3. Liability for Carriage Between Port of Loading and Port of Discharge

4. Law and Jurisdiction

5. The Scope of Carriage

6. Substitution of Vessel

7. Transhipment

8. Liability for Pre and On-Carriage

9. Loading and Discharging

10. Freight, Charges, Costs, Expenses, Duties, Taxes and Fines

11. Lien

12. General Average and Salvage

13. Both-to-Blame Collision Clause

14. Government Directions, War, Epidemics, Ice, Strikes, etc.

15. Defences and Limits of Liability for the Carrier, Servants and Agents

16. Government Directions, War, Epidemics, Ice, Strikes, etc.

17. Shipper-Packed Containers, trailers, transportable tanks, flats and palettes

18. Return of Containers

ADDITIONAL CLAUSE
U.S. Trade. Period of Responsibility

Additional clauses to "Conlinebooking 2000" Liner Booking Note

19. Jurisdiction and choice of law

Any dispute arising under this Booking Note shall be decided by the competent Court at Amsterdam, the Netherlands, and Netherlands law shall apply, except as provided elsewhere herein.

20. P and I Club

The Carrier warrants that his liabilities under this contract and, in case the Carrier is not the registered owner of the vessel the liabilities of the registered owner and (if applicable) the bareboat charterer of the vessel, are also fully covered by a P and I Club, being a member of the International P and I Clubs.

21. Bills of Lading

The Carrier shall issue and release 'Conlinebill 2000' Liner Bills of Lading marked "Clean on board" and "Freight payable as per Booking Note".

The Bills of Lading are to be signed by or on behalf of the Master.

If "freight prepaid" Bills of Lading will be required same to be released only after Carrier received irrevocable freight remittance details.

22. Freight and charges

Freight is inclusive of all terminal charges at load and discharge ports and wharfage at discharge.

There is to be no mention of freight details and charges and demurrage in the "Conlinebill 2000" Liner Bills of Lading issued.

23. Freight payment

The freight shall be payable 100 percent less commissions against Carrier's original freight invoice 4 banking days after signing and releasing to shippers of "Conlinebill 2000" Liner Bills of Lading marked "clean on board" and "freight payable as per Booking Note". The freight can only be remitted once the original "Conlinebill 2000" Liner Booking Note has been issued, signed and stamped by the Carrier or his authorised agent and signing and stamping of the original "Conlinebill 2000" Liner Booking Note by the Merchant has taken place.

If Carrier's authorised agent will sign and stamp the original "Conlinebill 2000" Liner Booking Note, Carrier's written authorisation, on Carrier's letterhead, will be required along with the signed and stamped original "Conlinebill 2000" Liner Booking Note.

24 Lien

The Carrier shall have a lien on the cargo for freight and dead-freight only.

The value of the cargo on which the Carrier exercises a lien shall not exceed the amount of the unpaid freight and/or dead-freight.

The value of the cargo shall be based on the Merchant's purchase invoice of the cargo.

25 Time for shipment

Should the vessel not be ready to load (whether in berth or not) on or before the final days of laycan, Merchants have the option of cancelling this contract. In case vessel is delayed and unable to be ready to load until the agreed cancelling date the Carrier will inform the Merchant accordingly and the Merchant to declare latest within 1 working day after receipt of Carrier's notice whether to cancel the contract or whether they extend the cancelling date to the date as requested by the Carrier. In case of no reply within the above mentioned time limit, it is agreed that the cancelling date has been extended, but only if the new cancelling date will not be later than 4 days after the initially agreed cancelling date.

26 Stowage

The cargo is to be loaded under deck, cool and away from heat and in unobstructed main compartments only.

27 Rotation

The vessel is to sail directly from the cocoa load port to the cocoa discharge port

28 Origin/Destination Clause

The Carrier warrants that the vessel is in all respects eligible for trading to the ports, places or countries and that at all necessary times the vessel and/or the Carrier shall have all valid certificates, records or other documents required for such trade

29 Suitability

The Carrier warrants that the vessel is fully and in every way fitted and suitable for the carriage of cocoa beans in bags. All compartments are to be clean, dry, free from insects and other vermin, loose rust and scale, smell and in a fit and proper state. The cargo is to be loaded under deck, cool and away from heat and in unobstructed main compartments only. If the vessel fails inspection the Carrier is to expedite cleaning in order to have the vessel clean and loadready at the earliest moment. The Carrier shall use all possible means to make the vessel clean, including, but not limited to, the hiring of shore labour and/or equipment at their expense. The Carrier shall be liable for all costs and expenses of fumigation of the vessel.

30. ISM Clause

From the date of coming into force of the International Safety Management (ISM) Code in relation to the Vessel and thereafter during the currency of this Booking Note, the Carrier shall procure that both the Vessel and "the Company" (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Carrier shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Merchant. Except as otherwise provided in this Booking Note, loss, damage, expense or delay caused by failure on the part of the Carrier or "the Company" to comply with the ISM Code shall be for the Carrier's account.

31. Hatch clause

The vessel's hatches have to be watertight with rubbers and seals in place and the vessel to be in every respect in seaworthy condition and suitable to load the cargo contracted. The Carrier is to ensure that all prudent measures are taken to maintain the watertight integrity of the hatches, including, if necessary, caulking and taping hatches.

32. Ventilation

The Master is to operate the vessel's ventilation to minimise condensation.

33. Packing

The Carrier is responsible for all leak, slack, torn, wet, stained -even if dry- and discoloured - even if dry- bags
The Carrier is to refuse to load for shipment any bag in the following condition(s):

-leak
-slack
-torn
-wet
-stained, even if dry
-discoloured, even if dry
-bags with residues of pesticides

Any bag in the above condition(s) is to be replaced with a bag in sound condition by the supplier

34. Tally

The Carrier is responsible for the outturn tally. The Carrier is responsible for the outturn of exactly the number of bags reflected in the Bills of Lading.

35. Loading and Discharge

The cargo is to be loaded and discharged in Bill of Lading lots

36. Discharge/Delivery

The Carrier is to discharge/deliver the cargo against presentation of at least 1/3 original Bill of Lading only.

In case the receiver and/or their agents are not able to present the original Bill(s) of Lading before commencement of discharge/delivery, then only Continaf B.V. could authorise the Carrier to discharge/deliver the cargo without production of the original Bill(s) of Lading.

37. Notice clause

The Carrier/Master to give Merchants 10/7/5/3/2/1 days notice of vessel's estimated time of arrival at loading and discharge port(s). On sailing the Carrier/Master is to advise the Merchants of the quantity loaded, the sailing time and the estimated time of arrival at the discharge port(s).

38. Seaworthy trim

The Carrier warrants the vessel is able to safely sail between the loading/discharging berth(s)/anchorage(s)/port(s).

39. Taxes and/or dues

Any taxes and/or dues on vessel and/or flag and/or crew to be for the Carrier's account. Any taxes and/or dues on cargo and/or freight to be for the Merchant's account.

40. Loading Operations, Weather and Temperature reports

The Master is to complete the Loading Operations, Weather and Temperature reports. These 3 reports, duly signed and stamped by the Master, are to be presented to the Merchant.

41. Confidentiality

The terms of this contract are to remain strictly private and confidential and are not under any circumstances to be divulged by either party hereto to any third party(ies) whatsoever.

However, in the event of a demand for information or documents being made by any Government Department, Authority of other Statutory Agency, either party is allowed to comply with such demand.

40. ISPS/MTSA CLAUSE FOR VOYAGE CHARTER PARTIES 2005

(a)(i) The Owners shall comply with the requirements of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) relating to the Vessel and "the Company" (as defined by the ISPS Code). If trading to or from the United States or passing through United States waters, the Owners shall also comply with the requirements of the US Maritime Transportation Security Act 2002 (MTSA) relating to the Vessel and the "Owner" (as defined by the MTSA).

(ii) Upon request the Owners shall provide the Charterers with a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) and the full style contact details of the Company Security Officer (CSO).

(iii) Loss, damages, expense or delay (excluding consequential loss, damages, expense or delay) caused by failure on the part of the Owners or "the Company"/"Owner" to comply with the requirements of the ISPS Code/MTSA or this Clause shall be for the Owners' account, except as otherwise provided in this Charter Party.

(b)(i) The Charterers shall provide the Owners and the Master with their full style contact details and, upon request, any other information the Owners require to comply with the ISPS Code/MTSA.

(ii) Loss, damages or expense (excluding consequential loss, damages or expense) caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account, except as otherwise provided in this Charter Party, and any delay caused by such failure shall count as laytime or time on demurrage.

(c) Provided that the delay is not caused by the Owners' failure to comply with their obligations under the ISPS Code/MTSA, the following shall apply:

(i) Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code/MTSA.

(ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code/MTSA shall count as laytime or time on demurrage, unless such measures result solely from the negligence of the Owners, Master or crew or the previous trading of the Vessel, the nationality of the crew or the identity of the Owners' managers.

(d) Notwithstanding anything to the contrary provided in this Charter Party, any costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code/MTSA including, but not limited to, security guards, launch services, vessel escorts, security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the negligence of the Owners, Master or crew or the previous trading of the Vessel, the nationality of the crew or the identity of the Owners' managers. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(e) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

T.C.
İSTANBUL
DENİZCİLİK İHTİSAS MAHKEMESİ

İHTİYATİ TEDBİR KARARI

DOSYA NO          : 2008/53 D.İş

HAKİM             : ABDÜLKADIR ÇETKEN - 23757
KATİP             : FERHAT SAVAŞ - 99572

İHTİYATİ TEDBİR
TALEP EDENLER     : 1- DOĞU BATI SANAYİ ÜRÜNLERİ İHRACAT VE İTHALAT A.Ş.
                    2- ELİTTEPE KAHVECİLİK VE GIDA SAN. VE TİC. A.Ş.

VEKİLİ            : AV. AHMET ŞİRVAN KILIÇ
                    Fulya Mah. Denizhan Sok. No: 3 A Daire: 6 Mecidiyeköy İSTANBUL

KARŞI TARAF       : M/V LIBERTAS GEMİSİ DONATANI DOPMAR SRL VE İZAFETEN
                    CERRAHGIL GEMİ HİZMETİ FRİ VE ACENTELİĞİ A.Ş.
                    Cerrahgil İş Merkezi, Abdi İpekçi Cad. No. 53 Teşvikiye-Şişli İSTANBUL

TALEP             : SEFERDEN MEN

        İhtiyati Tedbir talep eden vekilinin Mahkememize verdiği 22.05.2008 tarihli
dilekçesi ile talep açılmış olup, değişik iş esas defterine kaydı yapıldıktan sonra dilekçe ve ekleri
incelendi:

        GEREĞİ DÜŞÜNÜLDÜ        /

        İhtiyati Tedbir talep eden vekili dilekçesinde; müvekkillerine ait 3.879.677,-
tonluk kakao çekirdeği yükünün konşimentoya istinaden karşı taraf donatan tarafından Fildişi Sahili'nin
San Pedro Limanı'ndan Marmara'da herhangi bir limana taşındığını, yükün gemiye yükleme işleminin
08.03.2008 tarihinde sona erdikten sonra geminin yüküyle birlikte aynı gün yola çıktığını, varış
zamanının da 28.03.2008 olarak verildiğini, boşaltma için verilen tahmini varış zamanının sefere
çıkıldığında belirlenmiş olmasına rağmen bu zamana kadar sağlıklı bir ETA bildirimi yapılmadığı gibi
geminin başından geçen olaylar hakkında da taşıyan tarafından kesin bilgilerin taraflarına verilmediğini,
adı geçen gemi donatanının iddiasına göre motor arızası sebebiyle seferin devam edemediğini ve bir
römörkör tarafından geminin Türk karasularına çekilerek, zirai karantina tarafından itaçlamaya alındığını
ve bu sebeple 14.05.2008 tarihi itibariyle boşaltma için Ambarlı Limanı'na ancak yanaşabildiğini, yükte
zarar oluşma ihtimalinin kuvvetli olması üzerine Büyükçekmece 3. Asliye Hukuk Mahkemesi'nin
2008/192 D.İş. dosyası üzerinden bilirkişi tespitinin yaptırıldığını, bilirkişi raporunun dosyaya
sunulduğunu, rapora göre müvekkilleri yük sahiplerinin uğramış olduğu zararın ciddi oranlarda
olduğunu, karşı tarafın yabancı olması ve geminin de yabancı bayraklı olması sebebiyle uğranılan zararın
tazminini sağlamak için geminin seferden alıkonulmasının gerektiğini belirterek LIBERTAS gemisi
hakkında Seferden Men kararı verilmesini talep etmiştir.

        İhtiyati Tedbir talep eden vekili dilekçesi ve ekine; Büyükçekmece 3. Asliye
Hukuk Mahkemesi'nin 2008/192 D.İş. sayılı bilirkişi raporu ve delil tespiti dosyası sureti, taşımaya
ilişkin konşimentolar, hazırlık mektubu, kargo manifestosu, gümrük beyannameleri, yazışmalar ve sair
belgeleri eklemiştir.

        Tüm deliller birlikte değerlendirildiğinde; Mahkememizin 2008/53 D.İş. sayılı
dosyasından mahkemece keşfe gidildiği ve gemide yüklü emtiaların bir kısmının hasarlı olduğunun
görüldüğü, dosyada bulunan bilirkişi raporunda da mallarda hasar olduğu belirlendiğinden, talepte
bulunan 6100 sayılı HMK'nun 101. ve müteakip maddelerindeki yazılı şartlar oluşmakla, gümrük beyannamelerinden
malların fatura bedellerinin toplamı 15.686.673,41.-USD. olduğu görüldüğünden, karşı tarafça takdiren
4.000.000,00.-USD. teminat verilinceye kadar M/V LIBERTAS isimli gemi üzerine İhtiyati Tedbir
talepte edenlerden 3 günlük kesin süresde %15 teminat alınmak koşuluyla transit geçişlerde dahil olmak
üzere Seferden Men yönünde İhtiyati Tedbir konulmasına karar verilmesi gerekmiştir. ( / )

DOSYA NO        : 2008/53 D.İş                                                        S: 2

## KARAR

1- M/V LIBERTAS gemisi üzerine transit eşyalarda dahil olmak üzere Seferden Men ve İHTİYATİ TEDBİR konulmasına.

2- İşin aciliyetine binaen İhtiyati Tedbir kararının icra için Ambarlı Kumport Liman Başkanlığına müzekkere yazılması ile kararın bir örneğinin gönderilmesine, İhtiyati Tedbir talep eden tarafca 4.000.000,00.-ABD miktarın %15 oranı olan 600,000 -USD nakti teminat veya muteber bir banka teminat ve süresiz teminat mektubunu 3 günlük kesin sürede ibraz etmesine, ibraz edilmediği takdirde ayrıca karar alınmasına gerek kalmaksızın geminin Seferden Men'ine ilişkin kararın kendiliğinden kalkmış sayılmasına.

Karşı tarafca 4.000.000,00.-ABD tutarındaki nakti teminat veya muteber bir teminatın tesis ve süresiz teminat mektubu ibraz edildiğinde ayrıca karar alınmasına gerek kalmaksızın geminin Seferden Men'ine ilişkin kararın kendiliğinden kalkmış sayılmasına.

3- İhtiyati Tedbir talep edenler kendilerini vekil ile temsil ettirdiğinden, Avukatlık Asgari Ücret Tarifesi gereğince belirlenen 140,00 -YTL ücreti vekaletin karşı taraftan alınarak İhtiyati Tedbir talep edenlere verilmesine.

4- Kararın taraflara tebliğine, peşin harç karar harcını karşıladığından ayrıca harç alınmasına yer olmadığına, dosya üzerinde yapılan inceleme sonunda karar verildi. 12.05.2008

Katip                                                         Hakim 23757

**T.R.**
**ISTANBUL**
**ADMIRALTY COURT**

**PRECAUTIONARY JUDGEMENT**

| | |
|---|---|
| **FILE NO** | : 2008/53 D.IS |
| **JUDGE** | : ABDULKADIR CETKEN |
| **CLERK** | : FERHAT SAVAS |
| **PARTY REQUESTED PRECAUTIONARY JUDGEMENT** | : 1- DOGU BATI SANAYI URUNLERI IHRACAT VE ITHALAT A.S. 2- ELITTEPE KAHVECILIK VE GIDA SAN. VE TIC. A.S. |
| **ATTORNEY** | : ADV. AHMET SIRVAN KILIC |
| **OPPOSING PARTY** | : ON BEHALF OF THE OWNER OF THE VESSEL M/V LIBERTAS CERRAHGIL GEMİ HIZMETLERI VE ACENTELIGI A.S. |
| **REQUEST** | : ARREST |

Request petition together with its appendix is investigated upon record of the action filed by the attorney of the party requested precautionary judgement on the date of 22.05.2008.
IT IS DECIDED:

The attorney of the party requested precautionary judgement declared in his petition that the cargo of 3.879,677.-tons cacao beans was carried under B/L by the opposing party the owner from San Pedro Port/Ivory Coast to any port in Marmara Sea, the loading operations completed on 08.03.2008 and vessel sailed as loaded same day, although the estimated time of arrival of the vessel for discharging was determined prior to commencement of voyage clear ETA and additionally clear information in respect of the events happened relating to the vessel was not given by the owner, as per the owner's allegation the vessel could not continue to her voyage due to engine breakdown, the vessel was tugged by a tugboat to Turkish waters and agricultural disinfectant was applied to the vessel therefore the vessel berthed at Ambarli Port for discharging only on 14.05.2008, upon the risk of damage to the cargo is likely expert determination was carried under file number 2008/192 D.İş of Buyukcekmece 3. Court of First Instance, expert report was submitted to the file, according the expert report the loss suffered by his clients the cargo owners was at very high rate, and requested that arrest order to be issued on the vessel LIBERTAS by declaring that the vessel should be arrested since the opposing party was foreigner and the vessel was foreign flagged and in order to provide his clients to be compensated for the loss suffered by them.

The attorney of the party requested precautionary judgement attached his petition and its appendix; expert report of Buyukcekmece 3. Court of First Instance under file number 2008/192 D.İş and copy of evidence determination file, Bs/L relating to the carriage, notice of readiness, cargo manifest, customs declarations, correspondence and other documents.

Upon evaluation of all evidence, it was seen that some part of the cargo onboard the vessel was damaged upon investigation by our court under file number 2008/51 D.İş. and it was determined in expert report that the cargo was damaged, the conditions in article 101 and the following articles of Code of Civil Procedure are met, it was seen from the customs declaration that the total invoice amounts was USD-15.686.673,41 and it was judged that precautionary judgement to be issued as arrest order including the transit passages on the vessel M/V LIBERTAS with the condition that 15% of security to be deposited by the party requested precautionary judgement within 3 definite days period until the opposing party deposit the security amount at discretion USD-4.000.000.

JUDGEMENT

It was judged that;

1- Precautionary judgement to be issued as arrest order including the transit passages on the vessel M/V LIBERTAS,

2- Copy of judgement to be sent to Ambarlı Kumport Harbour Master in order to execute the precautionary judgement, the amount of USD-600.000 as 15% of USD-4.000.000 either in cash to be deposited or unlimited and indefinite bank letter of guarantee to be submitted by the party requested precautionary judgement within 3 definite days period, otherwise arrest order to be deemed as lifted automatically without any requirement for another judgement to be issued.

Once the opposing party deposits USD-4.000.000 in cash or submits unlimited and indefinite bank letter of guarantee issued by a standing bank, the arrest order to be deemed as lifted automatically without any requirement for another judgement to be issued,

3- Since the the party requested precautionary judgement was represented by an attorney the attorney fee in the amount of YTL-140,00 to be given by the opposing party to the attorney of the party requested precautionary judgement,

4- The judgement to be served to the parties. 22.05.2008

Clerk                                                                                    Judge

# EMAIL TRANSMISSION

**M  F  B**

S  O  L  I  C  I  T  O  R  S

**Confidentiality Notice**
The information contained in this email is confidential and may be privileged. It is only for the use of the intended recipient. If you are not the named or intended recipient, please notify us immediately. In such an event, you must not make any use of this email or the information contained in it and you may not disclose the contents to any other person. Please contact us immediately if any part of this email is inadequately received.

4 5     M O O R F I E L D S
L O N D O N     E C 2 Y     9 A E

TELEPHONE: 020 7330 8000
FACSIMILE: 020 7256 6778
EMAIL: mail@m-f-b.co.uk
WEBSITE: www.m-f-b.co.uk

EMAIL:              pjago@m-f-b.co.uk

TOTAL NUMBER OF PAGES              2

| | |
|---|---|
| **DATE:** | **8 July 2008** |
| **TO:** | **BASIC COMMODITIES BV C/O M & M MARINE ISTANBUL** |
| **EMAIL:** | **C/O:** <br> **medship@medistanbul.com** <br><br> **medship@medship.net** <br> **and** <br> **FULYA MAH. DENIZHAN SOK. NO. 3/A D: 6** <br> **34394 MECIDIYEKÖY / ISTANBUL** |
| **REF/ATTN:** | **MR AHMET SIRVAN KILIC** |
| **EMAIL:** | **ahmetsirvan@kuelawoffice.com** |
| **OUR REF:** | **PCJ/BMM/0121/285011** |
| **MATTER:** | **M/V "LIBERTAS" CHARTERPARTY DATED 14/02/08** |

### PLEASE PASS TO BASIC COMMODITIES BV

We refer to the above mentioned charterparty and confirm we act for Dopmar SRL ("Owners") in connection with all claims by our clients against Basic Commodities BV (Charterers) arising under and in connection with the above mentioned charterparty. The charterparty is subject to English law and arbitration in London. Accordingly the charterparty, under English law, is a reference to a sole arbitrator. We now give notice of arbitration of all of Owners' claims against Charterers and we call on Charterers to agree to the appointment of one of the below named arbitrators, and who are each members of the London Maritime Arbitrators' Association (LMAA).

We request Charterers agreement to the appointment as arbitrator of either Mr Bruce Buchan, Mr Patrick O'Donovan or Mr Graham Clark. Further details of each of these gentlemen may be found on the LMAA website, www.lmaa.org.uk.

If Charterers do not agree to the appointment of one of these gentlemen we request they propose alternative arbitrators for our clients' consideration. In the event that the parties cannot agree on the

· Stuart Blaxell · Joanna Bruce · Faye Doherty · Edward Gray · Ian Hawkes · Gerard Hopkins · Andrew Hughes ·
· Peter Jago · Michael Mitchell, *Master Mariner* · Mark Seward · Jonathan Watson · Simon Wolsey · Andrew Wright ·

Regulated by the Solicitors Regulation Authority

identity of a sole arbitrator, our clients will apply to the English High Court to appoint an arbitrator in this dispute.

We await hearing from you.

Regards.

**MFB**

## LAYTIME CALCULATION
### M/v. LIBERTAS - C.P. DTD 14.02.2008 - SAN PEDRO / AMBARLI

| PORT(S) | SAN PEDRO | AMBARLI |
|---|---|---|
| QUANTITY | | 3,879,677 |
| disch rate | 8,5 TTL DAYS | SSHEX EIU FRI17/MON08 NTC EIU |
| demurrage rate  USD/day | | 7,200.00  WHEN ON DEM ALWAYS ON DEM |
| demurrage rate  USD/day | | - |

| | AT LOADING | | AT DISCHARGING | |
|---|---|---|---|---|
| NOR tendered | 03/03/2008 | 8.00 | 06/05/2008 | 8.00 |
| Laytime commenced | 03/03/2008 | 14.00 | 06/05/2008 | 14.00 |
| Laytime completed | 08/03/2008 | 22.50 | 23/05/2008 | 15.30 |

| | | | | |
|---|---|---|---|---|
| Laytime allowed | 8,5000 days | | 204.00.00 hours | |
| Total time used | 18,5625 days | | 445.30.00 hours | |
| Time difference | (10,0625) days | | | |

| DEMURRAGE | $ | | -72.450,00 | |
|---|---|---|---|---|

Calculations

| DATE | | TIME | | days | hours | remarks |
|---|---|---|---|---|---|---|
| | | from | to | | | |
| **SAN PEDRO** | | | | | | |
| 03/03/2008 | MONDAY | 14.00 | 0.00 | 0,4167 | 10.00.00 | TIME COUNT AS LAYTIME |
| 04/03/2008 | TUESDAY | 0.00 | 0.00 | 1,0000 | 24.00.00 | TIME COUNT AS LAYTIME |
| 05/03/2008 | WEDNESDAY | 0.00 | 0.00 | 1,0000 | 24.00.00 | TIME COUNT AS LAYTIME |
| 06/03/2008 | THURSDAY | 0.00 | 0.00 | 1,0000 | 24.00.00 | TIME COUNT AS LAYTIME |
| 07/03/2008 | FRIDAY | 0.00 | 17.00 | 0,7083 | 17.00.00 | TIME COUNT AS LAYTIME |
| 07/03/2008 | FRIDAY | 17.00 | 0.00 | | | NTC - WEEK END |
| 08/03/2008 | SATURDAY | 0.00 | 22.50 | | | NTC - WEEK END |
| | | | | | | |
| **AMBARLI** | | | | | | |
| 06/05/2008 | TUESDAY | 14.00 | 0.00 | 0,4167 | 10.00.00 | TIME TO COUNT AS LAYTIME |
| 07/05/2008 | WEDNESDAY | 0.00 | 0.00 | 1,0000 | 24.00.00 | TIME TO COUNT AS LAYTIME |
| 08/05/2008 | THURSDAY | 0.00 | 0.00 | 1,0000 | 24.00.00 | TIME TO COUNT AS LAYTIME |
| 09/05/2008 | FRIDAY | 0.00 | 17.00 | 0,7083 | 17.00.00 | TIME TO COUNT AS LAYTIME |
| 09/05/2008 | FRIDAY | 17.00 | 0.00 | | | NTC - WEEK END |
| 10/05/2008 | SATURDAY | 0.00 | 0.00 | | | NTC - WEEK END |
| 11/05/2008 | SUNDAY | 0.00 | 0.00 | | | NTC - WEEK END |
| 12/05/2008 | MONDAY | 0.00 | 8.00 | | | NTC - WEEK END |
| 12/05/2008 | MONDAY | 8.00 | 0.00 | 0,6667 | 16.00.00 | TIME TO COUNT AS LAYTIME  VSL ON DEM |
| 13/05/2008 | TUESDAY | 0.00 | 0.00 | 1,0000 | 24.00.00 | VESSEL ON DEMURRAGE |
| 14/05/2008 | WEDNESDAY | 0.00 | 0.00 | 1,0000 | 24.00.00 | VESSEL ON DEMURRAGE |
| 15/05/2008 | THURSDAY | 0.00 | 0.00 | 1,0000 | 24.00.00 | VESSEL ON DEMURRAGE |
| 16/05/2008 | FRIDAY | 0.00 | 0.00 | 1,0000 | 24.00.00 | VESSEL ON DEMURRAGE |
| 17/05/2008 | SATURDAY | 0.00 | 0.00 | 1,0000 | 24.00.00 | VESSEL ON DEMURRAGE |
| 18/05/2008 | SUNDAY | 0.00 | 0.00 | 1,0000 | 24.00.00 | VESSEL ON DEMURRAGE |
| 19/05/2008 | MONDAY | 0.00 | 0.00 | 1,0000 | 24.00.00 | VESSEL ON DEMURRAGE |
| 20/05/2008 | TUESDAY | 0.00 | 0.00 | 1,0000 | 24.00.00 | VESSEL ON DEMURRAGE |
| 21/05/2008 | WEDNESDAY | 0.00 | 0.00 | 1,0000 | 24.00.00 | VESSEL ON DEMURRAGE |
| 22/05/2008 | THURSDAY | 0.00 | 0.00 | 1,0000 | 24.00.00 | VESSEL ON DEMURRAGE |
| 23/05/2008 | FRIDAY | 0.00 | 15.30 | 0,6458 | 15.30.00 | VESSEL ON DEMURRAGE |
| | | | | 18,5625 | 445.30.00 | |

| | | | | days | hours | |
|---|---|---|---|---|---|---|
| | | | | 0,0000 | 0.00.00 | |
| | | | | 0,0000 | 0.00.00 | |
| | | | | 0,0000 | 0.00.00 | |
| | | | | 0,0000 | 0.00.00 | |
| | | | Total at disch port | 0,0000 | 0.00.00 | |
| | | | time allowed: | 18,5625 | 445.30.00 | |



## NOTICE OF READINESS

SHIPTECH SRL

NAPLES - ITALY

Please note that the ship: m/v L I B E R T A S

Nationality. PANAMA

Call Sign: 3 EAV

arrived under my command at the port of   San Pedro

on ...23 February  2008   at ... 08.00 hrs. UTC

and is ready in all respect to commence load a cargo of   Cocoa Beans In bags

in accordance with the terms, supplements, deletions and exceptions of the

Charter Party dated ............... ..................... ......................................... ...................

If it is intended to commence  load the cargo earlier than named in the

Charter Part, time is to count from the time of actual beginning.

NOR TENDERED BY E-MAIL ON ...23  february  2008  AT ...08.50...... hrs LT

Place: P. San Pedro........    Date: 04-03 2008......Hour: ...................LT

AS PER C/P.

SDV-SAGA-COTE D'IVOIRE
SHIPPING - DEPARTEMENT
B.P. 369 SAN-PEDRO 21 16 91
Charter/Shipper/Consignee

Master's Signature and Vessel's Stamp:

Original. Ship's file
Copies: agents and others eventually as required

| COMPANY FORM | Revision 0 | 01-10-2004 | Page 1 of 1 |



AFRITRAMP

```
From : AFRITRAMP C/O  SAN-PEDRO          Date : 080308
To      RALLOSHIPPING /
Cc      AFRITRAMP Paris              Number of pages : 1
```

→ STATEMENT OF FACTS ←

Vessel's Name      : LIBERTAS      Loading terminal : SAN-PEDRO
Cargo/Total Tons To Load/: 58520 BAGS OF COCOA  3879 T 677

| | | |
|---|---|---|
| Arrival  on roads | Date : 230208 | Hours :  08H00 |
| Not Tendered | Date : 230208 | Hours :  08H00 AS PER C/P |
| Nor Accepted | Date : 050308 | Hours :  AS PER C/P |
| Pilot on board | Date : 040308 | Hours :  19H36 |
| Berthed All Fast | Date : 040308 | Hours :  20H35 |
| Port authorities on board | Date : 040308 | Hours :  21H30 |
| Free pratique granted | Date : 050308 | Hours : 12H27 |
| Commenced /load | Date : 050308 | Hours : 10H00 |
| Completed /load | Date : 080308 | Hours : 22H50 |
| Vessel sailed | Date :  080308 | Hours : 24H00 |
| ETA next port : ISTANBUL | Date :  280308 | |

Remarks: Berthing delayed due to lack of cargo readiness since vessel arrival
PREPARATION FACILITIES FOR LOADING FM 20H00 TO 050308 AT 07H00
Remarks:Holds inspection 21h50 -23h00,Preparing holds for hose test 11h45 -14h20
Fumigation 23h00-24h00 (need 4 hours for opening holds)
Opening holds on 050308 at 07h00

Cargo readiness:Safcacao 1000 mt customs cleared on 07/03/08 at 12h16 lt and
delivered into port warehouse on 05/03/08.
Safcacao 1500 mt customs cleared on 06/03/08 at 18h54 lt and delivered into port
warehouse 23 lots = 575 mt on 04/03/08  and 37 lots = 925 mt on 05/03/08
Outspan 725 mt customs cleared on 04/03/08 at 18h30lt and delivered into port
warehouse on 04/03/08. Outspan 575 mt customs cleared on 07/03/08 at 19h05lt and
delivered into port warehouse on 07/03/08
Loading progress
FM 05-06/03/08 AT 07H00 TO  07H00    : TOTAL LOADED = 11165 BAGS  733 T 555
Remarks:Laying playwood and kraft paper fm 07h00 to 09h25,commenced ops at 10h00
Completed first loaready cargo at 01h40, waiting cargo docs fm 060308 at 01h40 to 19h00
FM 06-07/03/08 AT 19H00 TO 07H00    : TOTAL LOADED =  9240 BAGS   607 T 080
Remarks: Laying playwood and kraft paper (hold n°3) 19h00 – 20h10
FM 07-08/03/08  AT 07H00 TO 07H00    : TOTAL LOADED = 23100 BAGS   1517 T 700
Remarks: Crane n°2 failure 22h25 – 23h20
FM 08/03/08 AT 07H00 TO 22H50     : TOTAL LOADED = 15015 BAGS  1021 T 342

TOTAL CARGO LOADED AT SAN-PEDRO : 58520 BAGS  OF COCOA  3879 T 677
CARGO DOCUMENTS ON BOARD : 080308 AT 23H30
Draft       arrival : FWD/AFT  1.8 M / 4.4 M    departure : FWD/AFT   5.00 M /  7.30 M
Bunkers           Arrival                     Departure
F/O /MDO/FW /  95 MT/  20 MT/ 10 MT       95  MT /   13.5 MT /    80 MT

SDV-SAGA-CI AGENT
SDV-SAGA-COTE D'IVOIRE
SHIPPING  DEPARTEMENT
B.P. 369 SAN-PEDRO / Tél. 34 71 16 91

MASTER-M/V LIBERTAS



| NOTICE OF READINESS | SHIPTECH SRL NAPLES - ITALY |

Please note that the ship: *m/v Libertas*

Nationality: *PANAMA*

Call sign: *3EAV*

arrived under my command at the port of *Ambarli*

on .......*06/05/2008*...... at .....*09:00*......... hrs. LT

and is ready in all respect to commence discharge a cargo of .....*09:10*.....

in accordance with the terms, supplements, deletions and exceptions of the Charter Party dated

.................*08/03/2008*.....................

If it is intended to commence discharge the cargo early than named in the Charter Part, time is to count from the time of actual beginning.

NOR TENDERED BY E-MAIL ON .....*06/05/2008*...... AT .....*09:20*...... hrs LT

Place: *Ambarli* ............ Date: *06.05.2008* Hour: *09:20* .... LT

**DOGUN BATI**
SANAYI GRUBU ELEKTRICAT ve IHRAUT A.S.
Charter/Shipper/Consigner

Master's Signature and Vessel's Stamp

Original Ship's file
Copies: Agents and others eventually as required

| COMPANY FORM | Revision 0 | 01-10-2004 | Pag 1 of 1 |

04/05/2008  10:11    02125095998              XXNETGEMIXX  :-              PAGE  01/01



# STATEMENT OF FACTS

**CERRAHGIL**

SHIP AGENCIES AND SERVICES CO. LTD.

| | STANDART STATEMENT OF FACTS |
|---|---|
| 1 Agent | RECOMMED BY |
| CERRAHGIL SHIP AGENCY AND SERVICES Co. | THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE (BIMCO) |
| (ADDRESS) | AND THE FEDERATION OF NATIONAL ASSOCIATIONS |
| IT OHERE ISTANBUL - TURKIYE | OF SHIP BROKERS AND AGENTS (FONASBA) |

| 2 Vessel's Name | M/V " LIBERTAS " | 3. Port | AMBARLI - KUMPORT - ISTANBUL |
|---|---|---|---|
| 4. Owners | | 5. Vessel Berthed | 14.05.2008 - 02:00 hrs |
| KALLOSHIPPING - ITALY | | 6. Loading Commenced | 7. Loading Completed |
| 8 Cargo | | 9. Discharging Commenced | 10. Discharging Completed |
| CACAO IN BAGS | | 14.05.2008 - 09:20 hrs | 23.05.2008    15:30 hrs |
| | | 11. Cargo Documents on Board | 12. Vessel Sailed |
| | | 23.05.2008    16:00 hrs | 24.05.2008    11:30 hrs |
| 13 Charter Party | | 14. Working hours/Meal hours of the port | |
| 15. Bill of lading weight/quantity : 3.879,677 MTS | | 00:00-01:00, 07:00-08:00, 12:00-13:00, 19:00-20:00 | |
| 17 Vessel arrived on road | 06.05.2008 - 09:00 hrs | 18. | 19.05.2008 NATIONAL/OFFICIAL HOLIDAY |
| 19 Notice of Readiness tendered | 06.05.2008 - 09:20 hrs | 20. Notice of Readiness accepted | 06.05.2008 - 09:20 hrs |
| 21 Pilot on board | 14.05.2008 -00:50 hrs | 22. Free pratique granted | 06.05.2008 - 09:20 hrs |

## DETAILS OF DAILY STOPPAGES

| Date | Day | Hours Worked | | Hours Stopped | | Remarks |
|---|---|---|---|---|---|---|
| | | From | To | From | To | |
| 06.05.2008 | TUESDAY | | | 09:20 | 16:20 | AWAITING RCVRS CUSTOMS IMPORT FORMALITIES |
| 06.05.2008 | TUESDAY | | | | 16:20 | COMMENCE OF CARGO INSPECTION IN HOLDS BY STATE |
| | | | | | | QUARANTINE & SANITARY AUTHORITIES |
| 06.05.2008 | TUESDAY | | | | 17:00 | INSPECTION COMPLETED, CARGO FOUND INFECTTED BY LIVE & DEAD |
| | | | | | | INSECTS CARGO DECLARED UNFIT FOR DISCHA REFUSED BY RCVRS |
| 06.05.2008 | TUESDAY | | | 17:00 | 24:00 | AWAITING STATE AUTHORITIES DECISION FOR FUMIGATION |
| 07.05.2008 | WEDNESDAY | | | 00:01 | 24:00 | AS ABOVE |
| 08.05.2008 | THURSDAY | | | 00:01 | 16:30 | AS ABOVE |
| 08.05.2008 | THURSDAY | | | | 14:30 | COMMENCE OF FUMIGATION DEMANDED BY STATE QUARANTINE |
| | | | | | | & SANITARY AUTHORITIES |
| 08.05.2008 | THURSDAY | | | | 21:50 | FUMIGATION COMPLETED |
| 08.05.2008 | THURSDAY | | | 21:50 | 24:00 | AWAITING NECESSARY PERIOD OPEN HATCHES FOR |
| | | | | | | VANTILATION & SECOND INSPECTION BY STATE AUTHORITIES |
| 09.05.2008 | FRIDAY | | | 00:01 | 24:00 | AS ABOVE |
| 10.05.2008 | SATURDAY | | | 00:01 | 24:00 | AS ABOVE |
| 11.05.2008 | SUNDAY | | | 00:01 | 24:00 | AS ABOVE |
| 12.05.2008 | MONDAY | | | 00:01 | 24:00 | AS ABOVE |
| 13.05.2008 | TUESDAY | | | 00:01 | 14:15 | AS ABOVE |
| 13.05.2008 | TUESDAY | | | | 14:15 | STATE QUARANTINE & SANITARY AUTHORITIES ON BOARD FOR |
| | | | | | | SECOND CARGO INSPECTION |
| 13.05.2008 | TUESDAY | | | | 15:00 | SECOND CARGO INSPECTION COMPLETED, CARGO DECLARED |
| | | | | | | CLEAN & ACCEPTED BY QUARANTINE SANITATION/RECEIVERS |
| 13.05.2008 | TUESDAY | | | 15:00 | 24:00 | AWAITING RCVRS CUSTOMS IMPORT FORMALITIES |
| 14.05.2008 | WEDNESDAY | | | 00:01 | 00:50 | AS ABOVE |
| 14.05.2008 | WEDNESDAY | | | | 00:50 | PILOT ON BOARD |
| 14.05.2008 | WEDNESDAY | | | | 02:00 | VESSEL BERTHED PILOT OFF |
| 14.05.2008 | WEDNESDAY | | | 02:00 | 09:30 | AWAITING RCVRS CUSTOMS IMPORT FORMALITIES |
| 14.05.2008 | WEDNESDAY | | | | 09:20 | COMMENCED DISCHARGING |
| 15.05.2008 | THURSDAY | | | 00:30 | 06:55 | NO WORK, DUE TO RAIN |
| 19.05.2008 | SUNDAY | | | 17:40 | 24:00 | NO WORK/AS PER RCVRS REQUESTED |
| | | | | | | DUE TO NATIONAL/OFFICIAL HOLIDAY |
| 19.05.2008 | MONDAY | | | 00:01 | 24:00 | AS ABOVE |
| 20.05.2008 | TUESDAY | | | 06:01 | 09:10 | AS ABOVE |
| 21.05.2008 | WEDNESDAY | | | 16:30 | 24:00 | NO WORK/AS PER RCVRS REQUESTED |
| 22.05.2008 | THURSDAY | | | 00:01 | 11:00 | AS ABOVE |
| 23.05.2008 | FRIDAY | | | | 15:30 | DISCHARGING COMPLETED |
| 23.05.2008 | FRIDAY | | | 18:10 | 24:00 | VESSEL AWAITING DUE TO ARRESTED FROM RECEIVER |
| 24.05.2008 | SATURDAY | | | 00:01 | 11:00 | VESSEL AWAITING DUE TO ARRESTED FROM RECEIVER |
| | | | | | 11:30 | VSL SAILED |

MASTER REMARKS :         ALL CARGO DISCHARGED AS PER CARGO MANIFEST AND ALL HOLDS EMPTY.

| DOGU BATI SANAYI A.S. | 1.495,890 | 38900 | 38500 |
|---|---|---|---|
| ELITEPE A.S. | 1.318,850 | 20020 | 20020 |
| SHORE FIGURE | 3.814.850 M/T AND | | 55520 BAGS |

| RECEIVERS | MASTER | AGENT |
|---|---|---|
| DOGU BATI SANAYI A.S. | M/V " LIBERTAS " | CERRAHGIL SHIP AGENCY |
| ELITEPE A.S. | | |

MAHONEY & KEANE LLP
Attorneys for the Plaintiff
11 Hanover Square, 10th Floor
New York, NY 10005
(212) 385-1422
Garth S. Wolfson

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**DOPMAR S.r.l.**

**Plaintiff**

- against -

**BASIC COMMODITIES B.V. a/k/a
BASIC COMMODITIES -
AMSTERDAM**

**Defendant**

08-Civ.5009 (RPP)

---

**DECLARATION OF PETER CHARLES JAGO UNDER ENGLISH LAW**

I, PETER CHARLES JAGO, declare under penalty of perjury:-

1.    I am a Partner in the firm of English solicitors, MFB, with offices at 45 Moorfields, London EC2Y 9AE, England.  I was admitted as a solicitor of the Supreme Court of England and Wales in 1982.

2.    I submit this Declaration of English law based upon my personal knowledge of the claims of Dopmar Srl ("Dopmar") as stated in the Complaint in this matter and my firm's representation of Dopmar in relation to the disputes in the arbitration described below.

A.    **Contractual Background**

3.    On or around 25 March 2008 Dopmar entered into a maritime contract of a Charterparty with Basic Commodities BV a/k/a Basic Commodities –

Amsterdam ("Basic Commodities") pursuant to which M/V "LIBERTAS" was chartered to Basic Commodities on a voyage charter basis "Abidjan or San Pedro/Marmara in Chopt 1GSPB AA Bends". The Charterparty further provides "GA/ARB IN LONDON ENGLISH LAW" and accordingly is subject to English law and the jurisdiction of London arbitration.

4.    The vessel loaded a cargo of cocoa beans in bags at San Pedro, Ivory Coast, and Bills of Lading were issued for the cargo on the "Congenbill Edition 1994 form" which established a contractual nexus between Dopmar and the holders of the Bills of Lading. The Bills of Lading provide, "All terms and conditions, liberties and exceptions of the Charterparty, dated as overleaf, including the Law and Arbitration Clause, are herewith incorporated." The effect of this provisions under English law is that the Bills of Lading are subject to English law and arbitration.

B.    **The Claims/Disputes**

5.    The vessel subsequently discharged the said cargo at Ambarli in Turkey in May 2008 and cargo interests brought claims against the vessel for alleged damage to the cargo, and furthermore proceeded to arrest the vessel in Turkey under Turkish law for security of US$4,000,000.00.

6.    Dopmar will deny it has caused any damage to the cargo but, in so far as there is damage, Dopmar claims against Basic Commodities that any damage has been caused by the negligent and improper stowage of the cargo by Basic Commodities and/or by shipment of cargo with inherent vice and which is therefore dangerous. The proper stowage of the cargo was the duty and responsibility of Basic Commodities under the above-mentioned Charterparty, and it is an implied term of the charter that Basic Commodities will not ship dangerous cargo. Dopmar has commenced arbitration proceedings in London against Basic Commodities with respect to this dispute. I am aware of the Memorandum of Law in Support of Motion to Vacate Order of Maritime Attachment and Garnishment filed by Mr Jeremy Harwood and dated 24 July 2008. In so far as the Motion to Vacate relies on the contention that Dopmar's

claim is for an indemnity/contingent indemnity I wish to provide the following opinion on the position under English law.

7.    Dopmar's claim is a claim for damages for the breach of contract, namely breach of the Charterparty. The Charterparty was on "FIOS" terms and under English law the effect of this is that Basic Commodities were responsible for the stowage of the cargo. Dopmar's claim is for the contractual breach by Basic Commodities of their obligation to properly and carefully stow the cargo and for breach of the implied term not to ship dangerous cargo.

8.    Claims for indemnities must be distinguished into two types. The first is a claim for damages for breach in order to indemnify the Claimant for loss suffered (as in this case). This remains a claim for damages for breach. This is to be distinguished from the second type which is a claim based upon a contractual promise of indemnity which is not founded on an allegation of breach. This second category is closer in analysis to that of a debt (but it is not the basis for Dopmar's claim in this matter).

9.    It is essential for an understanding of the accrual of the cause of action under English law to appreciate this distinction between a party to a contract breaching a contractual term or terms, and the situation where it is the claim of another party (outside the contract) that results in a claim between the parties to the contract. The former is a claim for breach of contract (as in this case) and the latter gives rise to the enforcement of a contractual promise to indemnify (which does not apply in this case).

10.    In English law, the cause of action for breach of contract accrues when the breach occurs, irrespective of the occurrence of damage. This is an old and well established rule, devised principally in the context of limitation, going back to the early eighteenth century; *Gould v. Johnson* [1702] 2 SALK. 422. In 1881, in *Gibbs v. Guild* [1881] 8 Q.B.D. 296 at p.302, Field J. felt able to say this,

*"... it was well settled that actions on assumpsit the time ran from the breach of contract, for that was the gist of the action, and the subsequent damage, although happening within six years next before sued, did not prevent the*

*application of the statute (of Limitations): <u>Battley v. Faulkner</u> [(1820) 3 B. & ALD. 288] ..."*

And he might also have referred to <u>*Howell v. Young*</u> [1826] 5 B. & C. 259 where the following was said:

*"In an action in assumpsit, the Statute of Limitations begins to run not from the time when the damage results from breach of promise, but the time when the breach of promise takes place.".*

Differently stated, Dopmar's causes of action based upon breaches of the Charterparty with Basic Commodities accrued upon the date of those breaches, namely when the cargo was loaded and improperly stowed on the vessel, and not at some later time such as when Dopmar may incur a liability to cargo interests.

11.  This principal of English law is clearly stated in the leading treatise <u>Chitty on Contract</u>, Volume I, 28-032:

*"The general rule in contract is that the cause of action accrues, not when the damage is suffered, but when the breach takes place."*

12.  Accordingly, in the present case Dopmar's claim against Basic Commodities is an accrued cause of action (and has been since Basic Commodities' failure to load non dangerous cargo and to stow the cargo properly).  Whilst Basic Commodities' damages may not be capable of assessment until a later time, this is irrelevant.  In the leading case of <u>*Hochster v. De La Tour*</u> [1853] 2 E&B 678, the Court of Queen's Bench Division held that an action for anticipatory breach lay even though it would only be later that the damages could be assessed.  Similarly, in the context of a contract of marine insurance, in <u>*Chandris v. Argo Insurance Co Ltd*</u> [1963] 2 Lloyds Rep. 65, the question was whether a claim against insurers for general and particular average losses accrued only after the publication of an average adjustment?  The Court held that the cause of action accrued at the time of the initial casualty, and not at the later time when the average adjustment was published.

13.    As a result, it is absolutely clear that Dopmar's causes of action against Basic Commodities accrued at the moment of the breaches (which was when Basic Commodities loaded and stowed the cargo) and is not inchoate or unaccrued until the liability of Dopmar to the cargo interests has been resolved and determined.    Dopmar can proceed to obtain an award from a London arbitration tribunal as of now.  The tribunal can determine the issue of liability and make an award for substantial damages (to be assessed), or it may actually determine, on the balance of probabilities, the issue of the liability of Owners to cargo interests and award substantial damages accordingly using evidence before the Tribunal and making a determination on the balance of probabilities.  In this regard Dopmar's Turkish lawyers have recently been informed that cargo underwriters have paid cargo interests US$3,400,000 by way of settlement of the claim under the insurance policy, and with the indication that cargo insurers will seek in subrogation to recover this sum from Dopmar.  Accordingly on the balance of probabilities it would be reasonable for the tribunal to assess Dopmar's potential liability to cargo interests at least in this sum and to award Dopmar damages at least in this sum from Basic Commodities.  Nevertheless, for present purposes I simply wish to highlight that Dopmar's claim against Basic Commodities is a claim for damages for breaches of contract which have already occurred and accrued.  Further, the causes of action for breach of contract accrues as at the date of breach irrespective of whether a loss is capable of being assessed at that time (although I have indicated above how the tribunal may proceed to assess the loss in any event).

14.    I note that Mr Harwood also refers to the _Caroline P._ [1984] 2 Lloyds Rep. 466, and this case is often cited in connection with disputes about the accrual of the right of action under English law.  The first point that needs to be made is that this decision concerns an attempt by a shipowner to recover from their charterers under a charterparty in respect of a cargo claim made against them in Iraqi Courts.  The English Court held that the shipowner was entitled to an indemnity from the charterers for the cargo claim; the indemnity to be implied as a matter of common law.  As I have stated above, Dopmar's causes of

action are based on direct breaches of the Dopmar - Basic Commodities Charterparty; they are not "indemnity claims".

15.   The second point about the *Caroline P.* that needs to be amplified is that it primarily concerns the effect of time bars or limitation of actions under English law depending on the manner in which a claim is presented.   As Mr Justice Neill expressly recognised (at 475R), different claims may be pursued by a party at the same time:

> *"Furthermore, it appears that were a person is entitled to rely on an implied indemnity he can make a claim on such an indemnity in addition to making a claim based on some express provisions of his contract with the indemnifier or (semble) a claim for damages for breach of contract."*

In the *Caroline P.* the claim by the shipowner was presented in two ways.   The first was a claim for breach of contract.   In fact Mr Justice Neill (475R) properly recognised the validity under English law of presenting the claim as such:

> *"As a claim on a breach of an implied term of the charterparty, the breach consisting in the presentation of bills for signature.   On this basis the cause of action arose at the moment of the breach."*

This claim based on a breach of contract was time barred because six years (the relevant period under Section 5 of the Limitation Act 1980) from the accrual of the cause of action had elapsed.

16.   The second was a claim for an indemnity on the cargo claim implied as a matter of common law.   This claim was not time barred because the English Court decided that the time for the accrual of the shipowners' cause of action for an indemnity against the time charterers arose at the earliest when the liability of the shipowners for the cargo claims had been ascertained by the Iraqi Court.

17.   The comments of Neill J. in column 2 on page 474 of *Caroline P.* have regrettably given rise to some confusion in relation to the accrual of a cause of action.   In column 2 on page 474, Neill J. identifies three broad categorisations

of claims where a party has become liable to another party (outside the contract) can seek redress against their contractual partner. The first category is under contract (and is relevant to Dopmar's claim against Basic Commodities). The second and third categories respectively arise under an express contractual indemnity and under a general implied indemnity under the common law (Dopmar do not claim against Basic Commodities on either of these bases).

18. The crucial point to understand from the comments of Neill J. is that the accrual of the cause of action under the first category (breach of contract) arises on the date of breach of contract. Neill J. went on to comment that for the second and third category (express or implied indemnity) the accrual of the cause of action arises when liability to the other party has been established or ascertained, but these comments are not relevant to Dopmar's claim against Basic Commodities as no claim is pursued on the basis of an express or implied indemnity.

19. The claims of Dopmar are all claims for a breaches of contract that have already occurred and so the causes of action for those breaches has already accrued and thus are "ripe", even if the precise quantum of the damages remains to be decided.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dated  31st  July      2008

At London, England

............Peter J.................

PETER CHARLES JAGO