```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
DOPMAR S.R.L.,
                                              08 Civ. 5009 (RPP)

            Plaintiff,


      -against-


BASIC COMMODITIES B.V. a/k/a
BASIC COMMODITIES - AMSTERDAM,


            Defendant.
------------------------------------X
```

MEMORANDUM OF LAW
IN OPPOSITION TO MOTION

Garth S. Wolfson (GW 7700)

    Of Counsel

MAHONEY & KEANE, LLP
Attorneys for Plaintiff
11 Hanover Square, Tenth Floor
New York, New York 10005
(212) 385-1422

TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES..........................................ii

COUNTER-STATEMENT OF FACTS.....................................1

ARGUMENT.......................................................2

    POINT I.    THE COMPLAINT PLEADS A PRIMA FACIE CLAIM SUFFICENT TO SUPPORT THE ATTACHMENT UNDER AQUA STOLI.................2

    POINT II.    NOR HAS BASIC SHOWN THAT THE INDEMNIFICATION PLAINTIFF SEEKS IS "UNRIPE" UNDER ENGLISH LAW..................4

    POINT III.    IN ANY EVENT, IT WOULD BE AN ABUSE OF THE COURT'S DISCRETION TO VACATE THE ATTACHMENT UNDER THE CIRCUMSTANCES..........5

    CONCLUSION.................................................9

TABLE OF AUTHORITIES

*Page*

*Cases:*

Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty, Ltd.,
460 F.3d 434 (2d Cir. 2006).................................2,4

Bottiglieri di Navigazione SpA v. Tradeline LLC,
472 F. Supp. 2d 588 (S.D.N.Y. 2007).........................4,7

Daeshin Shipping Co. v. Meridian Bulk Carriers, Ltd.,
No. 05 Civ. 7173 (NRB), 2005 U.S. Dist. LEXIS 22409
(S.D.N.Y. Oct. 3, 2005).......................................5

Greenwich Marine, Inc. s. S.S. Alexandra,
339 F.2d 901 (2d Cir. 1965)...................................5

Hibiscus Shipping, Ltd. v. Novel Commodities S.A.,
No. 04 Civ. 2344 (TPG), 2004 U.S. Dist. LEXIS 30328
(S.D.N.Y. Jul. 8, 2004).......................................6

Matter of the Complaint of Murmansk Shipping Co.,
No. 00-2354 Section "R" (5), 2001 U.S. Dist. LEXIS 25227,
2002 A.M.C. 2495 (E.D. La. 2001)..............................7

Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd.,
485 F. Supp. 2d 399 (S.D.N.Y. 2007).........................6,7

OGI Oceangate Transp. Co. v. RP Logistics Pvt. Ltd.,
No. 06-9441 (RWS), 2007 U.S. Dist. LEXIS 46841
(S.D.N.Y. Jun. 26, 2007)......................................3

Patricia Hayes & Assoc's v. Cammell Laird Holdings U.K.,
339 F.3d 76 (2d Cir. 2003)....................................5

Sonito Shipping Co. v. Sun United Maritime Ltd.,
478 F. Supp. 2d 532 (S.D.N.Y. 2007).........................4,7

SPL Shipping Ltd. v. Gujurat Cheminex Ltd.,
No. 06 Civ. 15375 (KMK), 2007 U.S. Dist. LEXIS 18562
(S.D.N.Y. Mar. 15, 2007)......................................3

Staronset Shipping Ltd. v. North Star Navigation Inc.,
659 F. Supp. 189 (S.D.N.Y. 1987)..............................8

T&O Shipping, Ltd. v. Lydia Mar Shipping Co.,
415 F. Supp. 2d 310 (S.D.N.Y. 2006)...........................4

Tideline, Inc. v. Eastrade Commodities, Inc.,
2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. 2007)......................3

Transportes Navieros y Terrestes, S.A. de D.V. v. Fairmount
Heavy Transp. N.V., No. 07 Civ. 3076 (LAP), 2007 U.S. Dist.
LEXIS 50260 (S.D.N.Y. Jul. 6, 2007).............................2

Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd.,
07 Civ. 5798 (CM), 2007 U.S. Dist. LEXIS 74477
(S.D.N.Y. Oct. 1, 2007).........................................3

*Statutes and Rules:*

Fed. R. Civ. P. 9(h)............................................6

Fed. R. Civ. P. Supp. R. B.................................1,2,6,8

Fed. R. Civ. P. Supp. R. Rule E(4)(f)...........................3

<u>COUNTER-STATEMENT OF FACTS</u>

Plaintiff's Complaint seeks Rule B security from defendant BASIC COMMODITIES B.V. (BASIC). (Complaint, Exhibit 1 to Wolfson Declaration). BASIC's motion presents no dispute that RULE B's prerequisites have been met, <u>i.e.</u> that plaintiff asserts a maritime claim against BASIC, and that BASIC is not "found" in this district, and that BASIC's property is located within the District. <u>See, generally</u>, BASIC's Memorandum of Law. But BASIC asserts that, inasmuch as indemnity is a "contingent liability," the Court should exercise its discretion by vacating the attachment. <u>Id.</u>

The Complaint alleges that plaintiff, as owner of the M/V LIBERTAS, entered into a charter party with BASIC, as charterer. (Complaint, Exhibit 1 to Wolfson Declaration, at ¶ 4; Fixture Recap, Exhibit 4 to Wolfson Declaration). It further alleges that, upon discharge, the Turkish cargo receivers claimed damages against the vessel due to allegedly faulty stowage and handling, for which BASIC was responsible under the terms of the charter party and English law. (Complaint, Exhibit 1 to Wolfson Declaration, at ¶¶ 5-7). And, in addition to indemnification damages, it should be noted that plaintiff also has a direct claim against BASIC for demurrage in the amount of $72,450.00, plus interest. (Laytime Calculation, Exhibit 7 to Wolfson Declaration).

Of particular note, however, cargo interests commenced legal proceedings against the vessel, resulting in the vessel's arrest and a Precautionary Judgment by the Istanbul Admiralty Court in the amount of $4,000,000.00 secured by the vessel, and that action is continuing in Turkey. (Complaint, Exhibit 1 to Wolfson Declaration, at ¶ 8; Precautionary Judgment, Exhibit 5 to Wolfson Declaration).

And, moreover, plaintiff has already commenced arbitration with BASIC in London with respect to this dispute. (Complaint, Exhibit 1 to Wolfson Declaration, at ¶ 13; Call for Arbitration, Exhibit 6 to Wolfson Declaration).

ARGUMENT

POINT I.    THE COMPLAINT PLEADS A PRIMA FACIE CLAIM SUFFICIENT TO SUPPORT THE ATTACHMENT UNDER AQUA STOLI.

Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty, Ltd., 460 F.3d 434 (2d Cir. 2006), held that the Court should look only to whether the prima facie requirements of Rule B have been met, i.e. that plaintiff alleges a maritime claim against the defendant, the defendant can not be found in the district, the defendant's property is in the district, and there is no other statutory or maritime law bar to the attachment. Id.

Since then, "'of the courts in this district to have considered the issue, the majority have interpreted Aqua Stoli to require the application of the prima facie standard when considering the adequacy of the claim asserted in the context of a maritime attachment.'" Transportes Navieros y Terrestes, S.A. de

<u>D.V. v. Fairmount Heavy Transp. N.V.</u>, No. 07 Civ. 3076 (LAP), 2007 U.S. Dist. LEXIS 50260, *9 (S.D.N.Y. Jul. 6, 2007) (quoting <u>OGI Oceangate Transp. Co. v. RP Logistics Pvt. Ltd.</u>, No. 06-9441 (RWS), 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. Jun. 26, 2007) (citing cases)); <u>see also</u>, <u>Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd.</u>, 07 Civ. 5798 (CM), 2007 U.S. Dist. LEXIS 74477, *22 (S.D.N.Y. Oct. 1, 2007) ("As a threshold matter, I reject defendants' presumption that the applicable standard to be applied to plaintiff's pleadings is the 'fair probability' standard. The majority of courts in this district have understood *Aqua Stoli* to require the application of the *prima facie* standard when considering the adequacy of a claim in a maritime vacatur Motion.") (compiling cases); <u>SPL Shipping Ltd. v. Gujurat Cheminex Ltd.</u>, No. 06 Civ. 15375 (KMK), 2007 U.S. Dist. LEXIS 18562, *10 (S.D.N.Y. Mar. 15, 2007) ("Therefore, this Court will only look to Plaintiff's pleadings, and not to any evidence submitted by the Parties, to determine whether Plaintiff has made a legally sufficient claim.").

But, under any standard, "maritime plaintiffs are not required to prove their cases at this stage of a Rule E(4) hearing." <u>Id.</u> at *12; <u>see also</u>, <u>Tideline, Inc. v. Eastrade Commodities, Inc.</u>, 2006 U.S. Dist. LEXIS 95870, **16-17 (S.D.N.Y. 2007) ("[A plaintiff] is not required to provide evidence showing that it has a claim against defendant to carry its burden under Supplemental Rule E(4)(f).").

3

In the case at bar, plaintiff seeks indemnification from BASIC pursuant to the provisions of the charter party running directly between plaintiff and BASIC. (Complaint, Exhibit 1 to Wolfson Declaration; Fixture Recap, Exhibit 4 to Wolfson Declaration). The Complaint affirmatively alleges that plaintiff is presently entitled to seek such indemnification. (Complaint, Exhibit 1 to Wolfson Declaration). And there is nothing on the face of the pleadings to justify BASIC's assertion that this is the kind of indemnity which does not, in fact, accrue under English law until the underlying judgment has been satisfied, as opposed to the type of indemnity which does accrue upon the breach. Id. As such, Aqua Stoli instructs that the Court should accept, for the present purposes, the truth of the allegations in the Complaint, leaving the merits of the issue to be decided in London arbitration.

**POINT II.        NOR HAS BASIC SHOWN THAT THE INDEMNIFICATION PLAINTIFF SEEKS IS "UNRIPE" UNDER ENGLISH LAW.**

Indeed, BASIC relies upon the cases of Sonito Shipping Co. v. Sun United Maritime Ltd., 478 F. Supp. 2d 532 (S.D.N.Y. 2007), Bottiglieri di Navigazione SpA v. Tradeline LLC, 472 F. Supp. 2d 588 (S.D.N.Y. 2007), and T&O Shipping, Ltd. v. Lydia Mar Shipping Co., 415 F. Supp. 2d 310 (S.D.N.Y. 2006), for the proposition that, under English law, payment on the underlying liability may be a condition precedent pursuant to some types indemnification claims (such as those arising under the Inter-Club Agreement [hereinafter "ICA"], which has no bearing here).

But no showing at all has been made to demonstrate why plaintiff's indemnification claim should not qualify as "contractual" or otherwise of a type presently accrued under English law. BASIC's argument not only asks the Court to disregard the pleading, but it is entirely conclusory. Indeed, plaintiff has further come forward with an English law opinion affirmatively explaining that the plaintiff's claims are, in fact, entirely valid and currently enforceable in the London arbitration now underway. (Jago Declaration, Exhibit 8 to Wolfson Declaration). As a matter of law, vacatur of the order of attachment simply can not be supported under such circumstances.

**POINT III.    IN ANY EVENT, IT WOULD BE AN ABUSE OF THE COURT'S DISCRETION TO VACATE THE ATTACHMENT UNDER THE CIRCUMSTANCES.**

The above notwithstanding, the Second Circuit has held that the district court has discretion to allow Rule B attachments to secure contingent liabilities. Greenwich Marine, Inc. s. S.S. Alexandra, 339 F.2d 901, 905 (2d Cir. 1965) (noting that relevant questions included whether there was an existing judgment and whether suit had been initiated); see also, Patricia Hayes & Assoc's v. Cammell Laird Holdings U.K., 339 F.3d 76, 82 (2d Cir. 2003).

Accordingly, courts have routinely allowed Rule B attachments to secure allegedly premature claims, as long as there was some evidence in the record upon which it could be concluded the underlying claim would be presented. See, e.g., Daeshin Shipping Co. v. Meridian Bulk Carriers, Ltd., No. 05 Civ. 7173 (NRB), 2005

5

U.S. Dist. LEXIS 22409, **8-9 (S.D.N.Y. Oct. 3, 2005) ("In particular, defendant has submitted exhibits including correspondence from head owners asserting claims against PanOcean, as well as correspondence indicating that Pan Ocean appears to be asserting claims against plaintiff . . . Thus, this case is distinguishable from *Greenwich Marine* . . . because in that case there was little indication that the damage claim would actually be passed through a chain of charter parties and asserted against the plaintiff."); Hibiscus Shipping, Ltd. v. Novel Commodities S.A., No. 04 Civ. 2344 (TPG), 2004 U.S. Dist. LEXIS 30328, *4 (S.D.N.Y. Jul. 8, 2004) ("In this case, the claim letter is sufficient evidence of a claim pursuant to *Fed. R. Civ. P. Rule 9(h)* and Supplemental Admiralty Rule B and vacatur is not warranted at this time.").

None of the cases upon which BASIC relies involved situations where actions had already been instituted against the plaintiff on the underlying claim, for which plaintiff had already had its vessel arrested to secure it. Id. And, in fact, that very line of cases has been specifically distinguished under precisely these circumstances. As discussed in Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 485 F. Supp. 2d 399 (S.D.N.Y. 2007):

> Cases involving arrests of ships in foreign ports to secure claims of lost or damaged cargo during ocean voyages, and discharges of ships from arrests by filing security with the arresting court in the form of surety bonds or bank guarantees, are classically the subjects of admiralty lawsuits . . . Vessel owners forced thereby to pay for losses attributable to the fault or responsibility

6

> of their charterers, in whole or in part, may assert claims of indemnity against their charterers, and frequently do so in arbitrations held in London . . . I find in the case before me that plaintiff Navalmar's claim in the London arbitration for indemnity against WGSR, the charterer, states a prima facie admiralty claim. Navalmar having been required to file a million dollar bank guarantee in the Aden Commercial Court, to secure the consignee of the goods for damaged cargo during an ocean voyage aboard the M/V Patara while it was chartered to WGSR, has a direct interest in securing its claim of indemnity against WGSR. In effect, Navalmar has had to prepay a debt owed by it or WGSR, as may be determined, and should have the right by attachment to secure its claim against WGSR for indemnity, just as the consignee of the goods gained security against Navalmar by arresting the vessel owned by Navalmar. The entire point of an attachment, as a provisional remedy before trial, is to secure a plaintiff's claim before it can be adjudicated. In a world of shifting assets, numerous thinly-capitalized subsidiaries, flags of convenience and flows of currencies, maritime attachments have a particular importance.

Id. at 403-04. Even considering the impact of the ICA, and its alleged express condition precedent to indemnity claims (again, inapplicable to the case at hand), the Court held:

> In *Sonito* and *Bottiglieri*, however, there had been no ship arrests or equivalent provisional remedy to secure payment by a vessel owner of a claim of damaged cargo . . . . Navalmar's case is different. Navalmar, in effect, has prepaid the full claim of the consignee by order of the Aden Commercial Court, for the credit of WGSR as well as of itself, and seeks to secure its claim against WGSR. The conditions of this case, flowing from litigation and a ship arrest in the Aden Commercial Court and a consequent arbitration in London, are significantly different from the conditions of *Sonito, Bottiglieri*, and like cases. The parties have cited no

> precedent to suggest that Clause 4 of the ICA should apply where a vessel owner has had to prepay an obligation potentially owed by the charterer for goods damaged in an ocean voyage arranged by the charterer.

Id. at 405; see also, Matter of the Complaint of Murmansk Shipping Co., No. 00-2354 Section "R" (5), 2001 U.S. Dist. LEXIS 25227, *11, 2002 A.M.C. 2495 (E.D. La. 2001) ("The Court does not agree that the attachment is inequitable. This is not a case in which Anangel has not yet been sued on the potentially indemnity-triggering liability, so that the ripeness of the indemnity claims is remote."); Staronset Shipping Ltd. v. North Star Navigation Inc., 659 F. Supp. 189, 190 (S.D.N.Y. 1987) ("The stevedore, claiming entitlement to fees for removing cargo from the ship, brought an action *in rem* and had the ship arrested in Texas. This forced the ship owner to post security in order to obtain the vessel's release . . . In the exercise of our discretion, we believe that the ship owner's concerns are reasonable and that he is entitled to the security which he seeks.").

In the matter at hand, court and arbitral proceedings are already underway with respect to both the underlying claim, as well as the claim for indemnification against BASIC; they are not "speculative" or "remote." (Complaint, Exhibit 1 to Wolfson Declaration, at ¶¶ 8, 13; Precautionary Judgment, Exhibit 5 to Wolfson Declaration; Call for Arbitration, Exhibit 6 to Wolfson Declaration). And plaintiff has been constrained to see its vessel placed under arrest to secure and essentially prepay a claim for which BASIC, as charterer, is responsible as a settled

matter of English law. <u>Id.</u> As such, the facts here could not more compellingly justify Rule B proceedings, as prior courts have not hesitated to emphasize.

**CONCLUSION.**

WHEREFORE, plaintiff urges the Court to deny BASIC's motion to vacate the order of attachment, and to grant to plaintiff such other and further relief as this Honorable Court may deem just and proper.

Dated:   New York, New York
         August 1, 2008

                                        Respectfully submitted,

                                        MAHONEY & KEANE, LLP
                                        Attorneys for Plaintiff

By:   _____
      Garth S. Wolfson (GW 7700)
      11 Hanover Square, Tenth Floor
      New York, New York 10005
      (212) 385-1422