BLANK ROME LLP
Attorneys for Defendant
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOPMAR S.R.L.,<br><br>        Plaintiff,<br><br>- against -<br><br>BASIC COMMODITIES B.V.,<br><br>        Defendant. | 08 CIV 5009 (RPP)<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE
ORDER OF MARITIME ATTACHMENT AND GARNISHMENT OBTAINED
UNDER SUPPLEMENTAL RULE B OF THE SUPPLEMENTAL RULES OF
F. R. CIV. P. FOR CERTAIN ADMIRALTY AND MARITIME CLAIMS**

*Jeremy J.O. Harwood*
*Blank Rome LLP*
*The Chrysler Building*
*405 Lexington Avenue*
*New York, NY 10174*
*(212) 885-5000*

130260.00601/6659112v.1

## TABLE OF CONTENTS

INTRODUCTION................................................................................................1

THE RELEVANT FACTS ...................................................................................1
    A.    OWNERSHIP OF THE VESSEL............................................................1
    B.    THE CATASTROPHIC FAILURE OF THE VESSEL .................................1
    C.    THE ALLEGATIONS IN THE JAGO DECLARATION .............................2

ARGUMENT .....................................................................................................4

POINT I..............................................................................................................4
THIS COURT HAS THE INHERENT AUTHORITY TO VACATE THE
ATTACHMENT ON EQUITABLE GROUNDS..........................................................4

POINT II .............................................................................................................5
DOPMAR'S FALSE CLAIM OF OWNERSHIP OF THE VESSEL IS "IMPROPER
PRACTICE" WARRANTING VACATUR...............................................................5

POINT III ...........................................................................................................6
THE COMPLAINT SHOULD BE DISMISSED UNDER F.R. CIV. P. RULE 12(b)(6) ..6

CONCLUSION ...................................................................................................7

130260.00601/6659112v.1

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Bottiglieri di Navigazione SPA v. Tradeline LLC*, 472 F. Supp. 2d 588 (S.D.N.Y. 2007)..................................................................................................6

*Chiquita International Ltd. v. M/V Bosse*, 518 F. Supp. 2d 589 (S.D.N.Y. 2007)..................................................................................................4

*Greenwich Marine, Inc. v. S.S. ALEXANDRIA*, 339 F.2d 901 (2d Cir. 1965) ...4,5,6

*Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532 (S.D.N.Y. 2007)..................................................................................................6

130260.00601/6659112v.1

## INTRODUCTION

Defendant BASIC COMMODITIES B.V. ("Basic") respectfully submits this reply memorandum of law in support of its motion pursuant to Supplemental Rule E and F. R. Civ. P. Rule 12 to vacate the ex parte attachment of $2,784,750 of its funds at American Express Bank and to vacate the order of attachment and dismiss the complaint.

## THE RELEVANT FACTS

### A.    OWNERSHIP OF THE VESSEL

Exhibits 1 and 2 to the declaration of Jeremy J.O. Harwood dated August 8, 2008 ("Harwood Dec.")[1] reflect that the registered owner of the M/V LIBERTAS (the "Vessel") is Atlantic Minibulk AS ("Atlantic"), not Dopmar. This discovery casts an entirely new light on Dopmar's claim that it is the owner of the Vessel and that by the Vessel's arrest it has "pre-paid" the Turkish Cargo Claimants, who have arrested the Vessel. The issue is discussed in Point I below as warranting vacatur based upon "improper practice."

### B.    THE CATASTROPHIC FAILURE OF THE VESSEL

As set out in detail in the declaration of Basic's broker, Mehmet Akyol, dated August 8, 2008 ("Akyol Dec.") and the exhibits thereto, the M/V LIBERTAS (the "Vessel") was unseaworthy at the beginning of her voyage.

The Vessel loaded the cargo on March 8, 2008 and should have arrived at her discharge port on or about March 29, 2008. Akyol Dec. ¶ 8. On April 4, 2008 Dopmar's

---

[1] Definitions are taken therefrom unless otherwise stated.

broker advised Mr. Akyol that the Vessel had deviated to "Tunis Anchorage Area (Due To Bad Weather)" and that it had sailed to Malta "For Bunker Supply And Change The Master)." Akyol Dec. Ex. 2. Dopmar's broker failed to tell Basic at that time that the Vessel's main engine had failed and, as later reported, "there was a situation [of] a great panic/confusion on board." Akyol Dec. Ex. 2. Because of that failure in the middle of a storm, the Master and 10 or 11 crew members insisted on disembarking when the Vessel finally reached Malta. Akyol Dec. ¶ 17. Following the delay in repair and finding a replacement Master and crew the Vessel again set sail and the main engine again broke down requiring the Vessel to be <u>towed</u> to Turkey. Akyol Dec. ¶ 15.

Because of the Vessel's unseaworthy condition, a voyage that should have taken 29-30 days in fact took 59 days. Akyol Dec. ¶ 20.

## C.    THE ALLEGATIONS IN THE JAGO DECLARATION

Dopmar has submitted the declaration of its English solicitor, Peter Jago ("Jago") dated July 31, 2008 ("Jago Declaration").

The Jago Declaration omits all mention of the Vessel's multiple main engine failures and, finally, towage across the Mediterranean to Turkey. It avoids mention of the Master and 10-11 crew abandoning the Vessel in Malta and addition of one month to the length of the voyage. It simply states that after loading the "vessel subsequently discharged at Ambarli in Turkey in May 2008 …". <u>Id</u>., ¶ 5.

The Jago Declaration belatedly attempts to dress up Dopmar's contingent indemnity claim based on the Vessel's potential liability <u>in rem</u> to the Turkish Cargo Claimants as an entirely independent "claim for damages for breach of contract, namely

2

breach of the Charterparty." <u>Id.</u>, ¶ 7. The nature of this breach is said to be "breach by Basic Commodities of their obligation to properly and carefully stow the cargo and for breach of the implied term not to ship dangerous cargo."

Mr. Jago claims that a London tribunal could determine "on the balance of probabilities" Dopmar's liability to the Turkish Cargo Claimants who have arrested the Vessel in the <u>in rem</u> proceeding in Turkey. <u>Id.</u> at ¶ 13. He claims that following such a Delphic ruing the Tribunal could "award substantial damages" to Dopmar based on its prognosis of Dopmar's <u>in personam</u> liability to the Turkish Cargo Claimants prior to any ruling by the Turkish Court in their favor. <u>Id.</u>, ¶ 13. Mr. Jago does not explain why such "substantial damages" would be justified even if the Vessel is exonerated. He claims, notwithstanding that his declaration purports to be "of English law based on my personal knowledge" (<u>Id.</u> ¶ 2), that the tribunal could "assess Dopmar's potential liability to cargo interests at least" in the sum of $3,400,000 that he has been told by Dopmar's Turkish lawyers that they have been "informed" the cargo interests have been paid. <u>Id.</u>, ¶ 13. This triple hearsay, on which Mr. Jago claims a London arbitral tribunal could base an award, is remarkable. It is also unfounded. Basic's counsel has communicated with Turkish Cargo Claimants' counsel, Mr. Kilic, who has confirmed the cargo insurers have made no payment. Harwood Dec. ¶ 10.

Likewise, Mr. Jago does <u>not</u> explain how Dopmar even is subject to an <u>in personam</u> claim. To the contrary, Mr. Jago asserts that "the Bills of Lading are subject to English law and arbitration." <u>Id.</u> at 4. Accordingly, Dopmar's position must be that its potential <u>in personam</u> liability, if any, to the Turkish Cargo Claimants is so governed.

3

Mr. Jago presumably is unaware that Dopmar is not the owner of the Vessel and therefore cannot assert an indemnity claim in any circumstances against Basic even if the Turkish Cargo Claimants recover on their in rem claim against the Vessel. He does not claim that Dopmar itself has provided any security to the Turkish Cargo Claimants.

**ARGUMENT**

**POINT I**

**THIS COURT HAS THE INHERENT AUTHORITY TO VACATE THE ATTACHMENT ON EQUITABLE GROUNDS**

Even if the technical requirements for a Rule B attachment have been met, the Second Circuit in Aqua Stoli provided three equitable grounds wherein an attachment may be vacated:

> 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

460 F. 3d at 436.

Under certain circumstances, courts may also expand these "guidelines" based on their "'inherent authority to vacate an attachment upon a showing of any improper practice or a manifest want of equity on the part of plaintiff." Chiquita Int'l Ltd. v. M/V Bosse, 518 F. Supp. 2d 589, 597-98 (S.D.N.Y. 2007) (emphasis added internal quotations omitted) (citing cases); accord ProShipLine Inc. v. Aspen Infrastructures Ltd., 07 Civ. 10969, 2008 WL 336471, at *7 (S.D.N.Y. Feb. 1, 2008) (citations omitted); see also Greenwich Marine, Inc. v. S.S. ALEXANDRIA, 339 F.2d 901, 905 (2d Cir. 1965) ("The

4

130260.00601/6659112v.1

inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge.").

## POINT II

### DOPMAR'S FALSE CLAIM OF OWNERSHIP OF THE VESSEL IS "IMPROPER PRACTICE" WARRANTING VACATUR

Dopmar filed its complaint as the alleged "owner of the M/V LIBERTAS." Id., ¶ 2. It alleged the Vessel had been arrested "to secure claims in the amount of US$4,000,000" Id. at 8. See also, Dopmar Brief at 1-2.

Dopmar's Brief further asserts that its Vessel's potential exposure to the Turkish Cargo Claimants is not a contingent indemnity claim because:

> [Dopmar] has been constrained to see its vessel placed under arrest to secure and essentially prepay a claim for which BASIC, as charterer, is responsible ...

Id. at 8. (emphasis added)

Dopmar has failed to advise the Court that the Vessel is owned by Atlantic, as registered owner, as shown in the Panamanian Register Certification and Lloyd's Register. Harwood Dec. Ex. 1 & 2. Accordingly, the assertion that Dopmar has now or may have in the future a "ripe" claim based on the Turkish Cargo Claimants satisfying a judgment against the Vessel in rem is without foundation. Further, the allegation that Dopmar has "pre-paid" the cargo claim based on the arrest of Atlantic's Vessel is also wrong.

Here the only "direct" claim that Dopmar has, as it concedes, is for $72,450 in demurrage, which it has not even alleged in its Complaint. c.f. Brief at 1. Its entire Rule

5

B action is premised on its false claim of ownership of the Vessel and its arrest by which it claims to have "pre-paid" the Turkish Cargo Claimants. The allegation of ownership by Dopmar is "improper practice" that warrants vacatur.

## POINT III

### THE COMPLAINT SHOULD BE DISMISSED UNDER F.R. CIV. P. RULE 12(b)(6)

Dopmar's Brief asserts that because it has satisfied the technical requirements mandated by Rule B, i.e. of not being "found" under the two-prong test, it has carried its burden to show the initial attachment was properly ordered.

Dopmar's argument that in adjudicating a Rule E and F.R. Civ. P. Rule 12 challenge the Court simply accepts the Complaint's pleadings at face value is contrary to the controlling authority in Greenwich Marine, Inc. v. S.S. ALEXANDER, 339 F.2d 901 (2d Cir. 1965). As stated in Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd., 478 F. Supp.2d 532, 540-41 (S.D.N.Y. 2007), "courts in this circuit have not been receptive to contingent indemnity claims as bases for maritime arrests [or] attachments." Quite clearly those courts referred to in Sonito, as well as Judge Kaplan in Bottiglieri di Navigazione SPA v. Tradeline LLC, 472 F. Supp.2d 588 (S.D.N.Y. 2007), looked beyond the "prima facie" assertions, as permitted by Greenwich Marine.[2]

Mr. Jago's Declaration in asserting the London tribunal could "as of now" issue an award against Basic cannot survive cursory scrutiny. Id. ¶ 13. Clearly Dopmar cannot

---

[2]    It must be noted that Judge Berman, in San Juan Navigation v. Trans Power Co. Ltd., 08 Civ. 1562 (RMB) (S.D.N.Y. July 28, 2008) accepted a "prima facie" standard without discussion of Greenwich Marine or its progeny. Appendix A hereto.

6

claim it has suffered cargo damage as it did not own the cargo. The Complaint does not make any claim for damage to the Vessel caused by Basic's alleged breaches. Its only claim is for indemnity in the event the Turkish Cargo Claimants recover in rem. It is for exactly that reason Mr. Jago introduces the "hearsay" and incorrect assertion that the cargo claimants' insurers have paid $3.4 million.

Given that the claim for which recovery is sought in Turkey is in rem against the Vessel owned by Atlantic Dopmar's Complaint should, in the alternative, be dismissed under F. R. Civ. P. Rule 12(b)(6) for failing to state a claim upon which relief may be granted.

## CONCLUSION

WHEREFORE, Defendant respectfully requests that Amex be directed to release the $2,784,750 and the PMAG be vacated and the Complaint dismissed and for such other relief as is fair and equitable.

Date:    New York, New York
         August 8, 2008

Respectfully submitted,

BLANK ROME LLP

By: _____
    Jeremy J.O. Harwood
    405 Lexington Avenue
    New York, New York 10174
    (212) 885-5000

*Attorneys for Defendant*

7

130260.00601/6659112v.1